### CARPENTER *vs.* THE PEOPLE.

The words " previous chaste character," as used in the act of March 20, 1848, to punish abduction as a crime, mean actual personal virtue in the female, and to sustain an indictment it is necessary that she should have been chaste and pure in conduct and principle, up to the time of the commission of the offence, or the commencement of the acts on the part of the accused which resulted in the abduction of the female.

The word " previous" in this connection, must be understood to mean immediately previous, or to refer to a period terminating immediately previous, to the commencement of the guilty conduct of the defendant.

Although the female has previously fallen from virtue, yet if she has subsequently reformed and become chaste, she may be the subject of the offence declared in the statute.

The prostitution intended by the statute was that of the female to the lustful appetites of men *at any place* where prostitution of the character common at houses of ill fame or assignation is practised.

In order to constitute the offence created by the act of March 20, 1848, the abduction of the female must be for the purposes of her indiscriminate meretricious commerce with men.

Such must be the case, to make her a prostitute, or her conduct prostitution, within the act.

Accordingly, where it was proved that the female, when she left her home, went voluntarily, and not at the instance of the defendant, and that she had since lived and cohabited with him, and with no one else, it was *held* that an indictment would not lie for her abduction.

On the trial of an indictment for abduction, it is erroneous to charge the jury that they are to judge in regard to the meaning of the term " prostitution," as used in the act of March 20, 1848.

The idea that in criminal cases the jury are the judges of the law, as well as of the facts, is erroneous; not being founded upon principle or supported by authority. *Per* WELLES, P. J.

THE plaintiff in error was indicted in the court of sessions of Ontario county, under the act entitled " An act to punish abduction as a crime," passed March 20, 1848.   The indictment charged that the defendant did, on the 20th day of August, 1849, unlawfully and feloniously inveigle, entice and take away for the purpose of prostitution at a house of ill fame, assignation or elsewhere, one Louisa M. Sawyer, from the house of Joseph

Carpenter v. The People.

Sawyer her father, where the said Louisa then was; she the said Louisa being an unmarried female, of previous chaste character, and under the age of twenty-five years; against the peace, &c. The indictment contained six counts, all charging substantially the same offence in different forms. The defendant pleaded not guilty, and the trial came on at the term of the court of sessions held in May, 1850, when the defendant was convicted, and sentenced to two years imprisonment in the state prison at Auburn.

Upon the trial, evidence was given to show that the said Louisa M. Sawyer left her father's residence in Manchester, Ontario county, in June, 1849, by an arrangement between her and the defendant, and that she immediately went to live and cohabit with him, first at the house of one Emeline West, in the town of Naples, in the county of Ontario, and afterwards in the town of Hume in the county of Allegany. It was proved that after she left home she had been living, boarding and cohabiting with the defendant; but there was no evidence that she had cohabited or had illicit intercourse with any other person than him. It appeared that the defendant had been in the habit of visiting the said Louisa for a considerable length of time before she left home as aforesaid, and that up to the time of her acquaintance and intercourse with the defendant, her reputation for chastity was good; but the witnesses testified that her reputation after that, and down to the time she left home in June, 1849, was not good. The same witnesses testified that they never knew of her reputation or character for chastity being called in question, except in connection with the defendant. At the close of the evidence on the part of the people, the counsel for the defendant moved for his discharge, upon the ground, among other things, that there was no evidence that at the time of the alledged abduction, the said Louisa was in fact a person of chaste character; but that on the contrary there was evidence that her reputation for chastity was bad at that time. Also, that the act requires proof that the female should be taken away " for the purpose of *prostitution* at a house of ill fame, assignation or elsewhere;" and that evidence that she went for the purpose of living and

cohabiting with the defendant did not sustain the requirement of the statute in that respect. The motion was denied, and each of the points overruled by the court, and the defendant's counsel excepted. Evidence was then given on the part of the defendant for the purpose of showing that in the year 1846, and before her acquaintance with the defendant, the said Louisa had illicit intercourse with a young man, and also that she had repeated acts of illicit intercourse with the defendant before the alledged abduction in June, 1849, and during the year 1848, and that when she left home in June, 1849, she went voluntarily, and not at the instance or request of the defendant; and that she had since lived and cohabited with him, and with no one else. The evidence showed that the said Louisa was about twenty-three years of age at the time she left home in June, 1849. After the case had been summed up by the counsel for the defendant and the counsel for the people, the court charged the jury at length upon the various questions of law and fact in the cause; upon which charge the defendant's counsel took a variety of exceptions. Such parts of the charge excepted to as are material to be stated appear in the following opinion.

After judgment in the sessions, the defendant brought error to this court.

*E. G. Lapham* and *H. R. Selden,* for the plaintiff in error.

*S. V. R. Mallory,* (district attorney of Ontario county,) and *A. Worden,* for the people.

*By the Court,* WELLES, P. J. The statute under which the defendant was indicted and convicted, declared an act to be a misdemeanor and highly penal, which was not recognized by the common law as a crime against the public. By all rules of construing statutes of that character, it should not be held to extend to cases which are not clearly within its meaning and objects. The statute is in the following language:

"Any person who shall inveigle, entice or take away any unmarried female of previous chaste character, under the age of

Carpenter *v.* The People.

twenty-five years, from her father's house or wherever else she may be, for the purpose of prostitution at a house of ill fame, assignation or elsewhere, and every person who shall aid or assist in such abduction for such purpose shall be guilty of a misdemeanor, and shall upon conviction thereof be punished by imprisonment in a state prison, not exceeding two years, or by imprisonment in a county jail not exceeding one year. Provided that no conviction shall be had under the provisions of this act on the testimony of the female so inveigled or enticed away, unsupported by other evidence, nor unless an indictment shall be found within two years after the commission of the offence." (*Sess. Laws of* 1848, *ch.* 105, *p.* 118.)

Upon the conclusion of the evidence, the court below charged the jury, "that the term 'take away,' used in the act in question, does not mean an actual manual caption, or personal assistance, or forcibly; but it must be construed in connection with the other parts of the section and with reference to the words 'inveigle' and 'entice' which immediately precede it. That a person may come within the act who in any manner aids or assists the female in going away, even if she persuades him to assist, and he does so for the purposes mentioned in the act, he is within the meaning of the term 'take away.'"

The offence described in the statute is the inveigling, enticing or taking away of an unmarried female, &c. or aiding or assisting therein. It is in the same section called "abduction." In the legal sense, that word signifies the act of taking and carrying away of a child, ward, wife, &c. either by fraud, persuasion, or open violence. In one view, the case would be within the statute, where the party accused aids or assists in the abduction of the female, for the purpose of her prostitution, although she consents thereto, or even where she persuades him to take her away. He might, in such case, aid or assist in the abduction as really and actually, as if she should be taken away against her will; and he cannot excuse himself by the plea that he was persuaded to commit the offence.

These remarks, however, must be understood with this important qualification; that the aid or assistance by the person

charged, is rendered to some other, who is guilty of the same offence. The very words, aid and assist, imply another actor or agent. When one person renders aid or assistance, it is to some other. He is regarded as an auxiliary, acting in subordination to a principal. Thus, if one person by inveigling or persuading, obtains the consent of the female to go away for the purpose of :prostitution, and she thereupon at the request of, or by uniting with her seducer, persuades another person to take her away for the same purpose, such other person is guilty of aiding and assisting in her abduction. But if the female of her own accord, decides to go away for the purpose mentioned, and a person at her request and upon her persuasion furnishes her with the means of going, or carries her away, it can not, I apprehend, be said that he is guilty of aiding or assisting in her abduction, for the reason that in such case there would be no abduction within the meaning of the act.

It does not appear by the bill of exceptions, that any one besides the defendant and the female in question, was engaged in the supposed abduction in this case. It appears that evidence was given, on the part of the defendant, to show that when she left her father's house in June, 1849, she went voluntarily, and not at the instance or request of the defendant. This might all be, and the defendant be guilty of her abduction by his previous acts of inveigling and enticing. Evidence was given to show that when she left her father's house, at the time mentioned, it was by arrangement with the defendant. If the jury so believed, and that her consent to go was procured by the defendant in the manner and for the purpose mentioned, the indictment was sustained in respect to the defendant's instrumentality in her abduction. So far as the charge on this point is applicable to the proof in the case, I think it unobjectionable. If the language was unguarded, or the views of the court even erroneous upon an abstract question, it can not be a ground for reversing the judgment.

With respect to the character which the female must possess, in order to constitute the statute offence by the individual taking her away, the court below advised the jury that the term " pre-

vious chaste character," in the act, did not relate to or mean actual personal virtue ; that if the female was known as a person of chaste character and reputation at the time of the abduction, though it should turn out on the trial that she had, several years previous to the alledged abduction, been guilty of a single instance of unchaste intercourse, it would constitute no defence. In this part of the charge, and particularly wherein the jury were instructed that the terms "previous chaste character" did not relate to or mean actual personal virtue, we think the court erred. *Character* is defined by Webster to be "the peculiar qualities impressed by nature or habit on a person, which distinguish him from others; these constitute *real character*, and the qualities he is *supposed* to possess, constitute his *estimated* character, or *reputation.*"

Evidence had been given to show that the female in question had illicit intercourse with a young man in the year 1846, and before her acquaintance with the defendant. Under the charge given them the jury would have been justified, as far as respects this particular question, in convicting the defendant, although they believed, from the evidence, that the female had been in the constant habit of unchaste intercourse, without the concurrence of the defendant, up to the time of the alledged abduction ; provided it had not become sufficiently known to affect her reputation. We think the words referred to, do mean actual personal virtue—that the female must be actually chaste and pure in conduct and principle, up to the time of the commission of the offence. Not that this must be the case up to the moment of taking her away for the purpose mentioned ; but that it must be so up to the commencement of the acts of the party accused, done with the purpose indicated, and which result in such taking away. The process of inveigling and enticing may be the work of time, and when commenced, the female must be of chaste character in the sense above defined. The word "previous" in this connection, must be understood to mean immediately previous, or to refer to a period terminating immediately previous, to the commencement of the guilty conduct of the defendant. If the female has previously fallen from virtue, but has subse-

quently reformed and become chaste, there is no doubt but she may be the subject of the offence declared in the statute. If the charge had been thus qualified, it would have been unobjectionable in this respect. The evidence tended to show that this female had thus fallen, and the charge made the question to turn upon the fact, not of her repentance and reformation, but of the discovery by the community of her sin. The statute uses the expression "previous chaste *character*," not previous chaste *reputation*. The charge substitutes *reputation* for *character*. Reputation may be good evidence of character, but is not character itself. I do not see why it would not be a consistent and logical inference from the ruling of the court that a female, perfectly pure in heart and life, but who at the time of the abduction, through malice and falsehood sustained a bad reputation for chastity, could *not* be the subject of the abduction punishable by this statute. Indeed, this would seem to be the inevitable consequence of the doctrine of the charge.

The court below, among other things, instructed the jury that in regard to the purposes for which the female must be taken away, the statute means the same as though the words " for the purpose of prostitution" only had been used, without the addition of the words " at a house of ill fame or assignation, or elsewhere," the term " or elsewhere" neutralizing the effect of the terms " at a house of ill fame or assignation ;" and leaving the effect of the law the same as though the expression " at a house of ill fame, assignation, or elsewhere," had not been used.

This view, as to the interpretation of that part of the statute to which it relates, may be strictly correct, and yet I can hardly agree with the learned court by whom it was pronounced, without some qualification and explanation. I think it will hardly do to say that the words " or elsewhere," have the effect to neutralize entirely the previous words, " at a house of ill fame or assignation." I think the latter expression has an important meaning, and serves as a key to the evils against which the act was intended to operate. It may be that the act should receive the same interpretation as if the indication as to where the purposed prostitution was to take place, had been omitted.

VOL. VIII.　　　77

Carpenter *v.* The People.

It is frequently the case that certain words may be left out of a statute without changing its meaning; and at the same time by retaining them, the meaning of the legislature is more easily and certainly ascertained. Such is usually the object and use of recitals to statutes. In the present case, I think the words in question may be referred to, as indicating the kind of prostitution which it was intended to prevent.

By the word *prostitution*, in its most general sense, is understood, the act of setting one's self to sale, or of devoting to infamous purposes, what is in one's power; as, the prostitution of talents or abilities; the prostitution of the press, &c. In a more restricted sense, the word means, the act or practice of a female offering her body to an indiscriminate intercourse with men; the common lewdness of a female. The introduction of the words "at a house of ill fame or assignation," in the connection where they are found in the statute, leaves no doubt as to what kind of prostitution was intended. And although, as before suggested, the meaning would have been sufficiently plain without them, yet it was well to introduce them in order to prevent cavil or doubt. The statute, by declaring, that in order to constitute the offence, the female must be taken away, &c. for the purpose of prostitution, *at a house of ill fame, assignation* or elsewhere, has plainly indicated that the prostitution which the legislature had in view, was that of the female to the lustful appetites of men *at any place* where prostitution of the character common at houses of ill fame or assignation, is practised.

I have bestowed more attention upon this branch of the charge than it would otherwise have demanded, for the reason that I regard it the starting point of error in the court below, which led to a misconstruction of the statute, and resulted in the conviction of the defendant. The jury were instructed that they were to judge in regard to the meaning of the term "prostitution," and that *they* were to give to the expression "for the purpose of prostitution," its proper signification. In this, the court cast upon the jury a responsibility which did not appertain to them. The idea, which has become somewhat current

Carpenter *v.* The People.

in some places, that in criminal cases the jury are the judges of the law as well as the facts, is erroneous, not being founded upon principle or supported by authority. Courts of record are constituted the sole judges of the law in all cases that come before them.

The court below, so far as they intimated an opinion as to the meaning of the word "prostitution," as used in the act, gave the jury to understand, that it was not necessarily the indiscriminate intercourse of the female with men, but that it might be understood as equivalent to a state of concubinage, or the condition of a kept mistress. These terms are not employed in the charge, but its language can leave no other impression upon the mind. The jury was left at liberty to understand the word in that sense. This we think was the great error of the court below.

All lexicographers agree substantially with Mr. Webster in his definitions of the word prostitution, as heretofore stated. It is uniformly defined as being the acts or practice of a female offering her body to an *indiscriminate* intercourse with men. A prostitute, is a female given to *indiscriminate* lewdness; a strumpet. As a verb, its definition is to offer *freely* to a lewd use, or to *indiscriminate* lewdness. As an adjective, it means *openly* devoted to lewdness; sold to wickedness or infamous practices.

We are entirely clear that by the expression in question, as used in the statute, it was intended that in order to constitute the offence thereby created, the abduction of the female must be for the purpose of her indiscriminate meretricious commerce with men. That such must be the case to make her a prostitute, or her conduct prostitution, within the act.

Other offences against virtue and chastity have other names which are well understood. It is not every act of illicit intercourse between the sexes that amounts to prostitution. A female may live in a state of illicit carnal intercourse with a man for years, without becoming a prostitute, or her conduct prostitution, in the sense of this law, and without being amenable to any human law.

The bill of exceptions states that evidence was given to show that the female in question, when she left home in June, 1849, went voluntarily and not at the instance of the defendant, and that she had since lived and cohabited with him and with no one else.   If that was the object of her alledged abduction we think the case was not within the statute.   And yet the charge of the court left the jury at liberty to convict the defendant, although that and nothing else, was his purpose in her abduction.   We think the objects of the statute under consideration were to protect females of the description which it designates, and to arrest, as far as might be, the evils connected with those dens of iniquity and pollution with which our cities and many of our large towns are infested, called houses of ill fame and assignation, by cutting off one essential source of supply of victims.   That it is a law cumulative in its nature, designed the more effectually to prevent a class of evils already within its vindictive cognizance ; and not to punish a vice of a private character, however great its enormity, which was not committed with a view to promote a practice previously recognized as a crime ; and that its principal ultimate aim was at those acts and practices which the law had already marked, and denounced as public and indictable.

We think the conviction and judgment should be reversed, and a new trial granted.

---

ORANGE SPECIAL TERM, June, 1850.   *Brown,* Justice.