STATE *versus* JOHN A. STOYELL.

Proof that the defendant, by false representations, persuaded an unmarried female to go with him to a neighboring town, and there, having induced partial intoxication, had repeated sexual intercourse with her, will not support an indictment for enticing her away "for the purpose of prostitution," based on c. 4, of the Public Laws of 1861.*

INDICTMENT for a violation of c. 4, of the Public Laws of 1861.

The case came before the full Court on demurrer to the evidence.

It was proved that the unmarried female named in the indictment, was, on March 2, 1866, residing in her father's family, in this county; that she then went to the railroad station to meet her music teacher, where she met the defendant, with whom she had slight acquaintance; that the defendant urged her to go with him by the cars, then about starting, to a neighboring town for a ride, promising her, as an inducement, that he would bring her back in a carriage in two hours; that, suspecting no intention on the defendant's part, and having none herself, other than the avowed one of taking a ride, she consented to accompany him. When they arrived at the station in the neighboring town, they took a carriage to a hotel, where he engaged a private room, and conducted her to it; that, when they had entered the room, he locked the door and put the key in his pocket; that she at once asked to go home, and demanded a fulfilment of his promise to take her home, but that she

---

* See opinion.

was quieted with assurances that she should be returned in a short time; that the defendant then left the room, locking the door behind him, and after a short absence returned followed by a servant bringing a bottle and glasses; that the servant immediately retired, whereupon the defendant again locked the door and urged her to drink of the contents of the bottle, a glass full of which he offered her; that, after assurances that it would not injure her, she finally drank what was offered; that she did not know what the liquid was, but that it produced a degree of intoxication; that he induced her to drink a second time and then he had sexual connection with her; that she did not remember whether the connection was on the bed or sofa; that she asked again to be taken home, when the defendant promised to get a carriage soon; that she then told the defendant that in the morning she had no thought of ever being in her then present condition, that he replied he did, and had thought of it for a week; that, after a while, he took her down to supper, she being unable to walk without support; that, after supper, he conducted her to the private room, gave her more drink and again had connection with her; that, after repeated requests on her part, he, through the interposition of a young man, whom they together went to see, procured a horse and carriage and drove with her to her father's house; that she expressed her fears of her inability to account to her parents for her absence, and he told her she could fabricate a story that would satisfy them; that they arrived at her father's late at night and found a light burning in the house; that she told the defendant she was afraid to go into the house, and he said she must return to their hotel, which she declared herself unwilling to do, but while she was talking he turned the carriage and started back to their hotel where they arrived after midnight; that they were unable to obtain admittance to their hotel, and then went to another, obtained admittance, took a room together and occupied the same bed; that, in the night and the next morning, the defendant again had connection with her; that, in

the forenoon of the next day, they returned by cars; that the defendant urged her to go with him to Portland and stay a few days, saying she might as well be hung for a sheep as a lamb, but she refused and went home.

It was also proved that, on or about Nov. 8, following, she gave birth to a living child.

It also appeared in evidence that, on the first day of March aforesaid, the defendant called at her father's and inquired for her; that, on being told she was out, he left word for her, that a female friend of hers would pass through town on the noon train of the next day and would like to see her at the station; that she did not go to the station, but her father went and saw the defendant in waiting.

It also appeared that no other person than the defendant had any connection with her while absent from home with him, and that no pay was given to her.

The evidence was reported to the full Court, who were to determine whether the facts proved constituted the offence alleged; if they did, the case was to stand for trial; if not, a *nolle prosequi* to be entered.

*J. A. Peters, Attorney General*, for the State.

*H. L. Whitcomb* and *Davis & Drummond*, for defendant.

APPLETON, C. J. — The defendant is indicted for a violation of c. 4, § 1, of the Acts of 1861.

By R. S., 1857, c. 124, § 6, "if an unmarried man commits fornication with an unmarried woman, they shall each be punished by imprisonment not more than sixty days and by fine not exceeding one hundred dollars."

By c. 4, § 1, of the Acts of 1861, "whoever fraudulently and deceitfully entices or takes away an unmarried female from her father's house, or wherever else she may be found, *for the purpose of prostitution*, at a house of ill-fame, assignation or elsewhere, and whoever aids and assists in such abduction or secretes such female for such purpose, shall be punished by imprisonment in the state prison not less than one year nor more than ten years."

These sections are for different purposes. They create different offences and impose different punishments. A person may be guilty of one offence and not of the other. He may commit fornication with a female without intending to induce such female to become a prostitute. He may entice one away from her father's house for the purpose of prostitution, he may induce her to become a prostitute without committing fornication with her. Indeed, persons of either sex may entice away females for the purpose of supplying brothels and houses of ill-fame.

The offence set forth in the statute under which this indictment is found, is the fraudulently and deceitfully enticing away an unmarried female from her father's house, or wherever she may be found, *for the purpose of prostitution*, at a house of ill-fame, assignation or elsewhere, &c. Worcester defines prostitution thus, " to offer to a common, lewd use; to make a prostitute of; to corrupt. 'Do not prostitute thy daughter.' Lev. xix. 29." A prostitute is a female given to indiscriminate lewdness for gain. In its most general sense, prostitution is the setting one's self to sale, or of devoting to infamous purposes what is in one's power. In its more restricted sense, it is the practice of a female offering her body to an indiscriminate intercourse with men; the common lewdness of a female. *Carpenter* v. *People*, 8 Barb., 603. In *Com.* v. *Cook*, 12 Met., 93, a statute similar in its language and its object to that of this State now under consideration, received a judicial construction — and it was there held, that it did not apply to the case of a man's enticing a woman to leave her place of abode for the *sole* purpose of illicit sexual intercourse with him.

It appears in proof that the defendant, by false representations, procured the complainant to go with him to Bath, and there, having induced partial intoxication, had repeated sexual intercourse with her. Sexual intercourse, the evidence shows, was the whole object he had in view. Nothing indicates a design on his part to make her a common prostitute. His only purpose was sexual gratification. However

infamous the conduct of the defendant—however deserving of punishment he may be, he cannot be legally convicted of, nor punished for a crime he has never committed. The evidence on the part of the government fails to sustain the allegations of this indictment, while it abundantly proves him guilty of another and different offence—that is, fornication.

The facts on the part of the government are uncontradicted. No further evidence is attainable. To send the cause to a jury would only delay its decision, without changing the result. By the agreement of parties the case stands as on a demurrer to the evidence—an obsolete form of procedure, though sometimes recognized, as in *State* v. *Soper,* 16 Maine, 293. Upon the facts as proved, the defendant cannot legally be convicted of the offence for which he is indicted, and the county attorney may very properly enter a *nolle prosequi.*

KENT, WALTON, DICKERSON and DANFORTH, JJ., concurred.