## SISEMORE v. STATE.

### Opinion delivered June 24, 1918.

1. PANDERING—SUFFICIENCY OF INDICTMENT.—An indictment charged that defendant did "transport and cause to be transported and did unlawfully and feloniously aid and assist in obtaining transportation for Julia Howard, a female person, through, across * * * the State of Arkansas, and through and across Madison County in the State of Arkansas, for the purpose of prostitution and with the intent and purpose to induce, entice and compel such female person to become a prostitute." *Held*, the indictment sufficiently charged a crime under § 5 of the Act of 1913, p. 407.

2. PANDERING—INTERSTATE JOURNEY.—The Act of 1913, page 407, denouncing the crime of pandering, *held* not an exercise of control over interstate commerce, in its provision over the bringing of a female person into, through or across the State for purposes of prostitution.

3. PANDERING—CONSTRUCTION OF ACT—PROSTITUTION.—In the act of 1913, p. 407, making it a crime to transport a female person into, across or through the State for purposes of prostitution, the word prostitute means a woman given to indiscriminate lewdness, and the word "prostitution" means a state of existence for that purpose, and does not include merely the act of a woman occupying the relation of concubinage with one man.

Appeal from Madison Circuit Court; *Jos. S. Maples,* Judge; reversed.

*Sullins & Ivie,* for appellant.

1.   The indictment is bad on demurrer.   It does not state facts sufficient to constitute a public offense under Act 105, Acts 1913, 407.   The State had no power to pass the act under the Interstate Commerce law.   Const. U. S., § 8, clauses 3 and 18, and the Mann Act, 8 U. S. Comp. St. 1916, § 8813; 16 Fed. 193; 223 U. S. 1; 227 *Id.* 308; 48 Mont. 456; Ann. Cas. D 1915, 1017; 136 La. 658.

2.   Incompetent testimony was admitted.   The wife was disqualified.   Kent's Comm. 179; Wigmore on Ev., § 2227 *et seq.*   It was prejudicial.   Underhill on Ev., § 185; Wigmore on Ev., § 2246; 40 Fla. 216; 137 U. S. 496; Underhill, Cr. Ev. 185; 57 Miss. 243; 119 Mo. 485; 127 Tenn. 355; 186 S. W. 95; 63 Atl. 317.

3.   The court erred in instructing the jury and there is no proof of the crime charged under the law.   126 Ark. 188; 111 *Id.* 214.   The defendant was erroneously convicted.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1.   The statute is valid so far as it affects this case. The statute is severable and the constitutional portion will be enforced.   6 R. C. L. 131, § 130; 91 Am. Dec. 262; 105 U. S. 305; 65 Kan. 240; 6 R. C. L., § § 121, 130.   Appellant violated the Mann act and our pandering statute by transporting a woman *through* or *across* the State for purposes of prostitution.

2.   There was no error in requiring the wife to testify.   Acts 1913, Act 105, § 7; 3 Wigmore on Ev., § 2196.

3.   There was prejudicial error in the instructions. 126 Ark. 188; 71 *Id.* 86; 88 *Id.* 99; 102 *Id.* 302.   The proof is sufficient to sustain the conviction.

McCULLOCH, C. J.   The indictment in this case is founded on an alleged violation of the act of February 26,

1913, against pandering (Acts 1913, page 407), and reads as follows:

"That the said T. J. Sisemore, in the county of Madison, in the State of Arkansas, on the 15th day of March, 1917, did unlawfully and feloniously transport and cause to be transported and did unlawfully and feloniously aid and assist in obtaining transportation for Julia Howard, a female person, through, across and out of the State of Arkansas and through and across Madison County, in the State of Arkansas, for the purpose of prostitution and with the intent and purpose to induce, entice and compel such female person to become a prostitute, and for the purpose of having sexual intercourse with her, the said Julia Howard, he, the said T. J. Sisemore, not being the husband of her, the said Julia Howard, against the peace and dignity of the State of Arkansas."

The language of the indictment is slightly confusing, but it was obviously the purpose of the pleader to frame the indictment under section 5 of the statute referred to above, which reads as follows:

"Any person who shall knowingly transport or cause to be transported or aid or assist in obtaining transportation for, by any means of conveyance into, through or across this State, any female person for the purpose of prostitution or with the intent and purpose to induce, entice or compel such female person to become a prostitute, shall be deemed guilty of a felony, and upon conviction thereof be sentenced to the penitentiary for not less than two nor more than ten years; any person who may commit this crime in this section mentioned may be prosecuted, indicted, tried and convicted in any county or city in or through which he shall so transport or attempt to transport any female person as aforesaid."

(1) There is no attempt to charge an offense under section 1 of the statute, which makes it unlawful for any person "by promises, threats, violence, by any device or scheme, by fraud or artifice, or by duress of person or goods, or by use of any position of confidence or authority, or having legal charge," to "inveigle, entice, per-

suade, encourage or procure any female person to come into this State or to leave this State for the purpose of prostitution," or, not being married, for the purpose of having sexual intercourse. *Holland* v. *State*, 111 Ark. 214.

After eliminating, as surplusage, the confusing allegations in the indictment, we find enough left to constitute a charge of violating section 5, for there is a distinct allegation that the defendant did "transport and caused to be transported and did unlawfully and feloniously aid and assist in obtaining transportation for Julia Howard, a female person, through, across * * * the State of Arkansas, and through and across Madison County in the State of Arkansas, for the purpose of prostitution and with the intent and purpose to induce, entice and compel such female person to become a prostitute." The words "and out of" may be eliminated because they are not embraced in the statute, and also the words "and for the purpose of having sexual intercourse with her, the said Julia Howard, he, the said T. J. Sisemore, not being the husband of her, the said Julia Howard," may be eliminated for the same reason. Section 1 makes it unlawful, as before stated, for a person to entice or persuade a female by promises, threats, violence, etc., to come into this State or leave this State for the purpose of prostitution or for the purpose of sexual intercourse, where the guilty party is not the husband of such female; but section 5 has no reference to the transportation of a woman merely for the purpose of having sexual intercourse with her, whether or not the parties occupied toward each other the relation of husband and wife.

There was a demurrer to the indictment, but we think the charge is sufficient to constitute an offense under this statute.

(2) It is also contended that the statute is void for the reason that it is an interference with interstate commerce, a subject over which the Congress of the United States has exclusive control. This subject was dealt with at length by the Supreme Court of the United States in

a case passing on the validity of the act of Congress commonly known as the White Slave Traffic Act. *Hoke v. United States*, 227 U..S. 308. The statute was upheld as a proper exercise of the powers of the general government in the control of interstate commerce, but the court in the opinion clearly recognized the police powers of the State governments in the regulation of their internal affairs, and it was said that the exercise of the powers by the general government does not encroach upon the jurisdiction of the States. The instrumentalities of transportation between the States, including the transportation of passengers, is interstate commerce, and the control of Congress over this subject is supreme and exclusive, but men and women are not articles of merchandise, so as to make their own conduct a matter of interstate commerce, and the purpose for which they are brought into the State may be controlled by the State in the exercise of its police power. Our statute makes the purpose for which a woman is transported into the State the controlling element of the offense, and not the transportation itself. Therefore, the State has a right to impose the penalty without burdening interstate commerce.

We are of the opinion, therefore, that the power of the Legislature has not been exceeded in the enactment of this statute. The demurrer to the indictment was properly overruled.

There is no dispute about the facts of the case, and we are of the opinion that the testimony fails to make out a case of violation of the statute.

The parties resided in Madison County. Julia Howard was a widow. Defendant was married, but he and his wife had separated and a suit for divorce was pending. The defendant and Mrs. Howard began having sexual intercourse under a promise made by him to her that as soon as he obtained a divorce they would intermarry. Those relations continued between the parties, and during that time they left Madison County and went to Oklahoma, and after remaining there a while they

came back into Madison County. The proof shows that the defendant aided Mrs. Howard in procuring transportation and that after returning to the State he furnished her means of transportation into Madison County. They resided in Madison County for a time, still continuing the acts of illicit intercourse, but as soon as defendant procured the divorce from his former wife he and Mrs. Howard intermarried. There is no proof in the record at all tending to show any acts of intercourse on the part of Mrs. Howard with other men or that she held herself out or was held out by any one as being a lewd woman. The testimony simply presents a case of a man and woman living in illicit relation and having sexual intercourse without being married.

This brings up for consideration a definition of the words of the statute which makes it unlawful to transport a woman "into, through or across this State * * * for the purpose of prostitution, or with the intent and purpose to induce, entice or compel such female person to become a prostitute." The lexicographers are unanimous in defining a prostitute to be "a female given to indiscriminate lewdness." Most of them include the element of "gain" in the definition, but some of the authorities hold that indiscriminate lewdness, even without gain, constitutes prostitution. There are many cases on the subject in which this definition is referred to.

Our statute was perhaps prompted by the enactment of the White Slave Traffic Act, but the latter act is much broader in its terms, as it declares it to be unlawful for a person to transport "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose to induce, entice or compel such woman or girl to become a prostitute or to give herself up to debauchery, or to engage in any other immoral practice." The Supreme Court of the United States construed that statute in the case of *Caminetti* v. *United States,* 242 U. S. 470, and held that the language was not confined in its operation to commercialized vice, but embraced an act of transporting a woman

by the instrumentalities of commerce from one State into another for the purpose of having sexual intercourse with her by her permission and without any sort of coercion. In the opinion in that case a former opinion of the same court in the case of *United States* v. *Bitty,* 208 U. S. 393, was referred to, and it shows that the court recognized the true definition of the word "prostitution," but held that the language of the White Slave Traffic Act contained a much broader definition. In the Bitty case, *supra,* the court dealt with a statute which declared to be unlawful "the importation into the United States of any alien woman or girl for the purpose of prostitution, or for any other immoral purpose," and it was held that while the importation of a woman for the purpose of sexual intercourse or concubinage did not come within the definition of the word "prostitution," it came within the other definition of immoral purpose. A former statute had merely used the word "prostitution," but the act construed in that case amended the former statute and added the words "or for any other immoral purpose." The court said: "There can be no doubt as to what class was aimed at by the clause forbidding the importation of alien women for purposes of prostitution. It refers to women who for hire or without hire offer their bodies to indiscriminate intercourse with men."

The statute now under consideration is so strikingly similar to the one in force in the State of Louisiana that it is evident that the framer of our statute, when he prepared it, had the Louisiana statute before him. The only difference between section 5 of our statute and the Louisiana statute is that the latter omits the word "into" and used the words "any woman or girl" instead of the words "female person," used in our statute. The Supreme Court of Louisiana, in construing the statute, held that the word "prostitution" means "the practice of a woman submitting to indiscriminate sexual intercourse with men for pay as distinguished from illicit sexual intercourse with one man. A woman who submits to illicit sexual intercourse with one man, not for pay, is not a prostitute

within the meaning of a statute that prohibits transporting a woman through or across the State 'for the purpose of prostitution or with the intent to induce her to become a prostitute.' " *State* v. *Thibodeaux,* 67 So. 973.

In the case of *Carpenter* v. *The People,* 8 Barb. 603, the New York court gave the following definition of the word prostitution: "All lexicographers agree substantially with Mr. Webster in his definition of the word prostitution, as heretofore stated. It is uniformly defined as being the acts or practice of a female offering her body to an indiscriminate intercourse with men. A prostitute is a female given to indiscriminate lewdness; a strumpet." The Kentucky Court of Appeals, in *Van Dalsen* v. *Commonwealth,* 89 S. W. 255, said that a woman was not a prostitute merely because she lived with a man without being married to him. Other cases on the subject, giving the same definition are: *State* v. *Porter,* 130 Ia. 690; *State* v. *Stoyell,* 54 Me. 24; *Haygood* v. *State,* 98 Ala. 61; *State* v. *Thuna,* 59 Wash. 689; *Commonwealth* v. *Cook,* 12 Metc. (Mass.), 93; *State* v. *Gibson,* 111 Mo. 92; *People* v. *Rice,* 277 Ill. 521, 115 N. E. 631.

There seems to be no contrariety of opinion whatever in the definition of this word, and we must assume that the Legislature used it in its ordinary sense as meaning a woman given to indiscriminate lewdness, and that the word "prostitution" meant a state of existence for that purpose and does not include merely the act of a woman occupying the relation of concubinage with one man.

There is not a particle of proof in the present case that the woman mentioned was ever guilty of any act of intercourse with a man other than the defendant himself, or that she was brought here for such purpose. All that the proof shows is that they occupied improper relations with each other until they could legally intermarry. The judgment is, therefore, reversed, and the cause is remanded for a new trial.