THE STATE v. NEELEY J. ANDERSON, Appellant.

Division Two, December 1, 1920.

1. **PROSTITUTION:** Definition. Prostitution as defined in the legal authorities and as used in Section 5 of the Act of 1913, Laws 1913, page 221, prohibiting the transportation of a female person across or through this State "for the purpose of practicing prostitution, or with the intent and purpose to induce, entice or compel such female person to become a prostitute," means "the common lewdness of a woman for gain," or "the act of permitting a common and indiscriminate sexual intercourse for hire."

2. ———: Transportation: Insufficient Evidence. Although defendant, a married man, prior to the time an unmarried girl left her parents' home, had had sexual intercourse with her, and paid her railroad fare to another town and secured a room for her at a hotel and she at his instance passed herself off as his sister, and although when she left home she "expected defendant to keep her," yet if he did not have or attempt to have sexual relations with her, and did not induce or attempt to induce her to have sexual intercourse with other men, from the time she left home until her return thereto, and he persuaded her to go to the other town for the purpose of obtaining employment, he was not guilty of a crime under the statute which makes it a felony for any person to transport or aid in transporting any female person through or

284 Mo.—42

State v. Anderson.

across this State "for the purpose of practicing prostitution, or with the intent and purpose to induce, entice or compel such female person to become a prostitute."

Appeal from Moniteau Circuit Court.—*Hon. J. G. Slate,* Judge.

REVERSED.

*Roy L. Kay* and *J. B. Gallagher* for appellant.

The taking of a female from her place of abode, though it be at the instance of the accused and for the purpose of sexual intercourse, does not .constitute the act "a taking within the purview of the statute." The taking, in order to be "a taking" under the statutatory prohibition of said Section 5 must be with the intent and purpose of causing the female to become a prostitute. State v. Gibson, 111 Mo. 98. Said section does not prohibit mere sexual intercourse; it only prohibits the taking away of a female where the taking has in contemplation such sexual intercourse as will ultimately result in a life of prostitution. The mere intent to obtain sexual gratification will not support a charge of a taking away for the purpose of prostitution. State v. Gibson, 111 Mo. 99. "When a statute provides that the taking must have been for purpose of prostitution, the evidence must show beyond a reasonable doubt that the accused intended to cause the female to enter upon a life of indiscriminate sexual intercourse. It is not enough to show that he, or some third person, intended to have intercourse with her occasionally." Underhill on Criminal Evidence (2 Ed.), sec. 343; 32 Cyc. 731.

*Frank W. McAllister,* Attorney-General, and *Lewis Hord Cook,* Assistant Attorney-General, for respondent.

The gravamen of the offense is that any person who knowingly transports a female person through or across the State of Missouri with the intent and purpose

to induce, entice or compel such female person to become a prostitute, shall be deemed guilty, etc. Intent is a mere invisible resolve of the human mind and, ordinarily, must be gathered from the acts and conduct of the person charged with the commission of the act. State v. Beverly, 201 Mo. 558. The accepted definition of the word, "prostitute," is "a woman who indiscriminately consorts with men for hire." Here we have proof that the defendant clandestinely got the female from her home and from the control of her parents and transported her across the State. With what intent? The female transported is the sole witness who can enlighten in this case, as to the invisible resolve of the defendant. And she states that she was to work and that she supposed that she would live with defendant in a state of adultery. Under this evidence, could the jury suspicion that the intent of the defendant was to induce or entice or compel the female to consort with men indiscriminately for hire? We think not. "Mere suspicion, however strong, will not supply the place of evidence when life or liberty is at stake." State v. Jones, 106 Mo. 302; State v. Richmond, 253 Mo. 500. The evidence as a whole leaves much room for doubt, and there is not sufficient proof of his guilt to authorize the State to deprive defendant of his liberty.

RAILEY, C.—An amended information was filed in this cause on January 12, 1920, by the prosecuting attorney of Moniteau County, Missouri, in two counts. As the trial court directed a verdict in favor of defendant as to the first count, we will only set out the second count, under which defendant was tried and convicted, which reads as follows:

"S. C. Gill, prosecuting attorney within and for Moniteau County, Missouri, upon his oath of office, further informs the court that said Neeley J. Anderson, on or about the first day of October, 1919, at the county of Moniteau, in the State of Missouri, did then and there,

knowingly, unlawfully and feloniously transport and cause to be transported and procure transportation for and assist in obtaining transportation for a female person, to-wit, Eula Heather, through and across this State of Missouri, to-wit, from the City of California, in Moniteau County, Missouri, to the town of Mayview in the County of Lafayette, Missouri, with the intent and purpose, then and there, knowingly, unlawfully and feloniously to induce, entice and compel said Eula Heather to become a prostitute, against the peace and dignity of the State."

On January 12, 1920, defendant was arraigned, enterd a plea of not guilty, and proceeded to a trial of said cause before a jury. The evidence was heard, etc., and the jury returned the following verdict:

"We, the jury, find the defendant guilty as charged in the second count of the information and assess his punishment at imprisonment in the penitentiary for a term of four years. Herman Miller, Foreman."

Defendant, in due time, filed motions for a new trial and in arrest of judgment. Both motions were overruled and the cause duly appealed by him to this court.

The evidence offered by the State, is substantially as follows:

Eula Bolinger testified that prior to her marriage, she was named Eula Heather; that about October 1, 1919, she lived with her parents at California, Missouri; that she knew defendant, and talked with him, without the knowledge of her parents. She said she left California, Missouri, at the instance of defendant; that the latter paid her railroad fare to Mayview, Missouri; that she went to Tipton, and got on the train upon which defendant and his brother, Al. H. Anderson, were riding; that they got off at Sedalia, remained at the depot there until about seven o'clock next morning, when Al. gave her a ticket, and all three of them rode to Higginsville; that Al. got her a room at the hotel there, and she remained while they went to Mayview to see about work; that they left that evening for Mayview; Al. gave her

a ticket; when they got to Mayview, defendant and witness stayed at the depot that evening; Al. looked up a room, and stayed at a boarding house; she passed herself off as the sister of defendant and brother, at the instance of Al.; the latter told the landlady that the name of witness was Miller; defendant roomed upstairs and witness roomed downstairs; they got there Thursday evening; the boys worked some; they came to her room a little while in the evening when they came from work, and then went upstairs; Al. took her to Lexington, Missouri; they went to a restaurant for supper; she and Al. were arrested and taken to the city hall; neither of the boys gave her any money after they got there; her arrangement with defendant, to leave home, was made in Moniteau County, Missouri; they told her they would get her work, picking apples in the evaporator; defendant told her his sister intended to go back with Al. to Lexington to work; she did not know of defendant making arrangements for any other girls to go.

On cross-examination, witness testified, that her family and the Anderson family lived near each other at California, Missouri; that she had known the boys about two or three years; that she had been working at the overall factory at California, and defendant said he would get her a job up there; that Al. is the older brother of the two, and is a single man; that while at Mayview, both boys picked apples; "neither of the boys came to my room during the night;" that she was at Mayview from Thursday to Saturday evening. She testified, that neither of the boys did anything ugly with her, but treated her like a lady and like a sister; that neither of them went to bed with her. She said defendant had intercourse with her in California, Missouri, but Al. never did; that she had intercourse with defendant about two days before she left California. She testified, that before she left defendant never suggested to her to go up with him for the purpose of having her go with other men to make money; that he never suggested that at any time; that Al. made no such sug-

gestion; that neither of them ever brought any man around to her room, nor did either of the boys ever ask her to do wrong with other men, or with themselves; that Al. was going to leave her with a girl at Lexington, but she never saw the girl; that defendant did not go to Lexington; that since the above occurence witness has married. She says defendant never suggested to her to do wrong with other men, for money or otherwise. She said defendant was afraid to ge with her to Lexington; he was afraid of the law. Witness says she was sixteen years old at the time; that defendant told her he would get her a job, pay her way up there and buy her clothes; that defendant's wife was at California at the time; that defendant told her about Al. being at work at Mayview; that appellant has a wife and children; that Al. bought her ticket, and put her on the train, when she came back from Lexington; she has not talked with Al. or defendant since she came back from Lexington; she expected defendant to keep her. She testified that she is defendant's cousin.

Witness Lizzie Tyler kept the boarding house at Mayview where defendant, his brother and Eula Heather stopped. They did not take their meals with witness. She said the girl occupied one room and the boys the other. They had to go through her room to get upstairs to their room. Witness said she never saw anything improper or immoral between these parties while they were at her house.

Witness Homer Salyer kept the restaurant at Mayview. Defendant, his brother and Eula Heather took their meals at the restaurant in Mayview, and he heard no immoral talk between them.

The foregoing covers substantially all the testimony relating to the subject-matter of this action.

The rulings of the court, the instructions and such other matters as may be deemed important, will be considered in the opinion.

I. It is conceded by counsel for the State, as well as those representing defendant, that the second count

of the information aforesaid is based upon Section five of the Act of 1913, Laws 1913, page 221, which reads as follows:

"That any person who shall knowingly transport or cause to be transported, or procure transportation for, or aid or assist in obtaining transportation for any female person through or across this State for the purpose of practicing prostitution or with the intent and purpose to induce, entice or compel such female person to become a prostitute, shall be deemed guilty of a felony and upon conviction thereof shall be sentenced to the penitentiary for not less than two nor more than twenty years."

Defendant raises the constitutionality of said Section 5, and insists that it contravenes Section 28 of Article 4 of our Constitution; etc.

In our view of the case, it will not be necessary to consider the validity of said section, as the legality of defendant's conviction cannot be sustained under the evidence. The Attorney-General, in his brief, concedes that the evidence is insufficient to sustain a conviction.

II.   Prosecution is defined by Webster to be: The "act or practice of prostituting the body; common lewdness of a woman." As defined in the legal authorities, it means: "The common lewdness of a woman for gain. The act of permitting a common and indiscriminate sexual intercourse for hire." [State v. Gibson, 111 Mo. l. c. 97; Black's Law Dictionary (2 Ed.) p. 959; 4 Elliott On Evidence, sec. 2745, p. 53; 3 Bouvier's Law Dictionary (Rawles 3rd Revision), p. 2755, and sases cited; Anderson's Law Dictionary, p. 839; State v. Stoyell, 54 Me. 24; Osborn v. State, 52 Ind. 526; Commonwealth v. Cook, 53 Mass. 93; State v. Ruhl, 8 Iowa, 447; Carpenter v. People, 8 Barb. 603; 8 R. C. L. sec. 351, p. 322; 32 Cyc. 731; Underhill On Criminal Evidence (2 Ed.), sec. 343.]

III. The evidence heretofore set out, construed in the light of foregoing authorities, signally fails to make out a case under the Act of 1913, supra.

The cause is accordingly reversed and defendant discharged. *White* and *Mozely, CC.,* concur.

PER CURIAM:—The foregoing opinion of RAILEY, C., is hereby adopted as the opinion of the court. All of the judges concur.