WOODSON *v.* FORT SMITH.

Opinion delivered September 29, 1924.

1. CRIMINAL LAW—FORMER ACQUITTAL—SEPARATE OFFENSES.—An acquittal of the common-law offense of "running a disorderly house" is not a defense to a charge against a female under a city ordinance providing that "every person who shall in said city suffer or permit any room or tenement in his or her possession or control to be kept, used or occupied for any such purpose (prostitution) shall be deemed guilty of a misdemeanor," etc., as the two offenses are separate and distinct.

2. PROSTITUTION—SUFFICIENCY OF EVIDENCE.—Proof that defendant used a room on one or more occasions for the purpose of illicit sexual intercourse does not establish that she was keeping a room for the purpose of prostitution or assignation.

Appeal from Sebastian Circuit Court, Fort Smith District; *John E. Tatum,* Judge; reversed.

*Holland, Holland & Holland* and *Roy Gean,* for appellant.

*Geo. W. Dodd,* for appellee.

WOOD, J. The appellant was convicted under an ordinance of the city of Fort Smith which provides as follows:

"Every bawd, prostitute, or loose woman who shall, in said city, occupy or use any room or tenement for the purpose of prostitution or assignation, and every person who shall in said city suffer or permit any room or tenement in his or her possession or control to be kept, used or occupied for any such purpose, and every male person who shall frequent or visit any room or tenement so kept, used or occupied for the purpose of illicit intercourse, shall be deemed guilty of a misdemeanor and a violation of this ordinance."

1. The appellant had been formerly tried and acquitted on a charge of "running a disorderly house" in the city of Fort Smith, and she pleaded former acquittal. "In order to support a plea of former conviction or acquittal it is essential to show that the two offenses are identical." *Johnson* v. *State,* 101 Ark. 159. The common-law offense of keeping a disorderly house is entirely separate and distinct from the specific offenses enumerated in the ordinance under which the appellant was convicted. The keeping of a disorderly house "may consist in its drawing together idle, vicious, dissolute or disorderly persons engaged in unlawful or immoral practices, thereby endangering the public peace and promoting immorality." *Thatcher* v. *State,* 48 Ark. 60-64. One might be convicted of the common-law offense of running a disorderly house without any testimony whatever as to the specific acts necessary to constitute the offenses embraced in the ordinance, and one might be acquitted of the offense of running a disorderly house and yet be convicted on the same proof of some one of the specific offenses named in the ordinance. "The safest general rule," says Corpus Juris, "is that the two offenses must be in substance precisely the same, or of the same nature,

or of the same species, so that the evidence which proves the one would prove the other. Or, if this is not the case, then the one crime must be an ingredient of the other.'' 16 C. J., p. 264, § 444. The court did not err in overruling appellant's plea of former acquittal.

2. The testimony for the city on which the appellant was convicted tended to prove that the prosecuting witness and the sheriff went to the house where the appellant lived, on June 15, 1923, and found her at home. She had on a slip, and did not have on her shoes. Leo Bercher, a married man, was also in the front room of the house, with his shoes off. He had on his trousers. He was sitting on the side of the bed. It was seven or eight o'clock at night. The blinds were down in the front room. Bercher was in the farthest room from the landing of the stairway. The appellant came out of that room. This was not the first time that the witness went with the officer to visit the house. The first time he went there some one was sick in bed. Witness supposed it was Leo Bercher. Bercher at that time told the witness to come in. Witness never saw anything wrong in the conduct of Mrs. Woodson up there, only she was in the house with Bercher. Bercher claimed to own the house. He saw nothing wrong in the conduct of Bercher, only he and appellant were there, and they had their shoes off. The immoral purpose which witness saw was that she was barefooted and wearing a house-dress with short sleeves and low neck, made straight all the way down. The bed in the room where Bercher was sitting looked as though some one had been sitting down or wallowing on it. Bercher claimed that he was boarding there. In entering the house the witness had to go up the back stairway. The parties were in the room at the end of a hall. The room Bercher was in was not locked, but the door that barred his room from the hallway was locked before they got there. It was three minutes after they knocked before they were admitted. The appellant said that Bercher had supper there. The dining-table was in the same room, and the table had not been cleared. The

appellant testified to the effect that, on the occasion mentioned, she had called Bercher to see about some plumbing; that when he came, she had supper ready, and he ate with her. She denied that she was in the room with Bercher at all, and stated that she was guilty of no immoral act with him.

The appellant asked the court to instruct the jury in effect that, before the defendant could be convicted upon the charge, they must believe beyond a reasonable doubt, from the evidence, that the defendant is a bawd, prostitute, or loose woman; that one act of sexual intercourse in the room mentioned would not be sufficient to sustain the charge. The court refused to so instruct the jury, to which the appellant duly excepted.

The warrant upon which the appellant was arrested is not set out in the record, but the record recites that appellant was "brought before municipal court, charged with the offense of using a room for immoral purposes." It will thus be seen that the appellant was not charged with the offense of occupying and using the room as a bawd, prostitute, or loose woman, for the purpose of prostitution or assignation, and there was no testimony to sustain such a charge, if it had been made. Therefore the court did not err in refusing to grant appellant's prayers for instructions above mentioned.

The charge against the appellant comes under that provision of the ordinance which provides that "every person who shall, in said city, suffer or permit any room or tenement in his or her possession or control to be kept, used or occupied for any such purpose (prostitution) shall be deemed guilty of a misdemeanor," etc. To sustain this charge, it was necessary for the State to show that the appellant suffered or permitted the room in her possession or control to be used or occupied for the purpose of prostitution or assignation.

In the case of *Batesville* v. *Smithey,* 138 Ark. 276, we had under consideration a precisely similar ordinance. In that case, construing the ordinance, we said: "It is thus seen that there are two elements constituting the

offense; one, the character of the woman as a prostitute or loose woman, and the use or occupancy of the room for the purpose of prostitution. It was therefore not sufficient to show merely that the room was used in a single instance for illicit sexual intercourse, without further proof that the woman using the room was a prostitute, and that she was using the room for the purpose of prostitution or place of assignation." And further: "The word 'prostitute' means a woman given to indiscriminate lewdness, and the word 'prostitution' means a state of existence for that purpose, and does not include merely the act of a woman occupying the relation of concubinage with one man." Citing *Sisemore* v. *State,* 135 Ark. 179.

Under the doctrine announced in these cases the testimony was not sufficient to sustain the verdict, because it does not tend to prove that the appellant was using the room or house designated for the purpose of prostitution as that term is defined in *Sisemore* v. *State, supra.* There is nothing in the testimony to establish the fact that the appellant used, suffered, or permitted any room in her possession or control to be kept, used or occupied for the purpose of prostitution or assignation. Giving the evidence its strongest probative force in favor of the city, the most that can be said of it is that it tended to show that the appellant might have occupied the room one or more times with Bercher for the purpose of illicit intercourse, but this was not enough to meet the requirements of the law, and does not constitute the offense against which the ordinance is leveled. The judgment is therefore reversed, and, inasmuch as the testimony seems to have been fully developed, the cause is dismissed.