# Commonwealth *v.* Fideli, Appellant.

*Criminal law — Pandering—Transportation of female person—
Section 5, Act of June 7, 1911, P. L. 698—Evidence—Sufficiency.*

Evidence that the defendant, at the request of a friend, met a
young woman at the railroad station and assisted her in finding a
lodging place, when she arrived by train at her destination, after a
journey undertaken upon her own initiative and at her own ex-
pense, is not sufficient to sustain a conviction upon a charge of
transporting a female person for purpose of prostitution in rela-
tion to the fifth section of the Act of June 7, 1911, P. L. 698.


Argued November 20, 1922.  Appeal, No. 14, March
T., 1923, by defendant, from judgment of Q. S. Elk
County, April session, 1921, No. 23, on verdict of guilty
in the case of Commonwealth of Pennsylvania v. Frank
Fideli.  Before PORTER, HENDERSON, TREXLER, KELLER,
LINN and GAWTHROP, JJ.  Reversed.

· Indictment for pandering.  Before HECK, P. J., 55th
Judicial District, specially presiding.

The facts are stated in the opinion of the Superior
Court.

Verdict of guilty upon which judgment of sentence
was passed.  Defendant appealed.

*Errors assigned* were refusal to quash the indictment,
refusal of new trial and the judgment of the court.

*B. F. Ely,* and with him *D. J. Driscoll,* for appellant.

*John C. Arnold,* and with him *Fred W. McFarlin,* Dis-
trict Attorney, for appellee.

OPINION BY HENDERSON, J., April 30, 1923:
The defendant was indicted under the Act of June 7,
1911, which declares pandering to be a felony.  The

first section defines pandering and prescribes a punishment for various acts within the definition of the offense. The 2d, 3d and 4th sections forbid conduct not relevant to the case under consideration. The fifth section provides that "any person who shall knowingly transport or cause to be transported, or aid or assist in obtaining transportation for, by any means of conveyance, into, through, or across this Commonwealth, any female person for the purpose of prostitution, or with the intent and purpose to induce, entice or compel such female person to become a prostitute, shall be deemed guilty of a felony." The indictment was drawn under the latter section. It contained four counts, and the conviction was had on the 4th count which charged that the defendant, "knowingly and feloniously, did aid and assist in obtaining transportation for, by means of a conveyance, to wit, a passenger train on the Buffalo, Rochester & Pittsburgh Railway Company, through and across the Commonwealth, to wit, the counties of Elk and McKean, a female person, to wit, Genevieve Hammond, with intent and purpose to induce, entice and compel the said Genevieve Hammond to become a prostitute." The indictment grew out of the same transaction on which the case against Joe Zampogna was based, whose appeal was disposed of in an opinion this day filed. The principal contentions of the appellant are that the fifth section of the statute is unconstitutional in that the subject thereof is not embraced in the title, and that the conviction was not supported by the evidence. In view of the conclusion reached, it is unnecessary to consider the first proposition as the case must be disposed of on the inquiry whether there is evidence supporting the indictment. The statute creates a new offense and is highly penal. In conformity to a well-known rule, applicable to criminal statutes, it must be strictly construed. It is an elementary rule in the construction of a statute that the words used are to be given their natural, plain and ordinary meaning if they are words of common use. The

intention of the legislature with respect to the first section of the act is obvious. It was to punish anyone who should procure a female inmate for a house of prostitution, or who should induce, persuade, encourage, inveigle or entice a female person to become a prostitute, or who by promises, threats, violence, or by any device or scheme should cause, induce, persuade, encourage, take, place, harbor, inveigle, or entice a female person to become an inmate of a house of prostitution, or assignation place, or to commit any of the other acts therein specifically set forth. This means that it is unlawful to cause a person to become a public prostitute, or to become an inmate of a house of prostitution, or place of assignation. The meaning of the words prostitute and house of prostitution is generally understood and was definitely declared in Commonwealth v. Lavery, 247 Pa. 139. It is unnecessary to restate the discussion as contained in that case. The act forbidden in section five as charged against the defendant in the count on which he was convicted is of a different character from those designated in the first section. The fifth section relates to transportation for the purpose or with the intent therein set forth. The language is plain and commonly understood. To transport is to carry from one place to another—a conveyance is the means or way of carriage. That the words were used in their common and well-understood meaning further appears from the provision in the same section that any person who may commit the crime in this section forbidden may be prosecuted, indicted, tried and convicted in any county or city through which he shall so transport or attempt to transport any female person as aforesaid. To bring a case within this section there must be therefore the transportation of a female for the purpose of prostitution, or with the intent to induce, entice or compel such female to become a prostitute. Does the evidence sustain the charge in the indictment? It appears that the young woman lived in Ridgway in Elk County; that she decided to go to Bradford in McKean

County to secure employment as a clerk or waitress; that she told an acquaintance, Joe Zampogna, of her intention, and he told her he would ask a friend of his at Bradford to meet her at the station and find her a lodging place. This he did by telephone. The young woman bought a ticket with her own money at the railway station and went to Bradford on a railroad train in the usual manner. Zampogna was in Ridgway the day the young woman left and rode on the train with her to Johnsonburg where he lived; at which place a friend of hers with whom she had corresponded for some time, got on the train and accompanied her to Bradford where they met the defendant at the station—he having come there to meet the young woman in response to the request by telephone from Zampogna. The defendant was not acquainted with the young woman and had never seen her before. He took her and her friend to a lodging house which was opened the day she arrived—she being the first occupant of a room in the premises. The house was new, or had undergone reconstruction, and was in charge of a tenant who was beginning the business of keeping a lodging house. The friend who accompanied the girl from Johnsonburg returned on an evening train. The defendant applied to the keeper of the restaurant at the St. James Hotel for employment for her and she went to the hotel to ascertain whether the place would be satisfactory. The conduct of the proprietor was offensive to her and she did not accept the position. The defendant visited her at the lodging house on two or more occasions, and there is evidence that he made improper solicitations to her which were rejected. There was no evidence of lewd conduct on the part of the young woman at the lodging house or elsewhere in the city, on the contrary the testimony negatived any assumption to that effect. Nor was there evidence that the house kept by Mrs. Carlsen was a house of prostitution or a place resorted to by men and women for purposes of lewdness. There was evidence showing the defendant

was a person of low moral character as exhibited in his conduct with reference to Mrs. Carlsen at some former time and in his overtures to Genevieve Hammond, but that had no bearing on the subject of the defendant's transportation of the latter to Bradford. His whole relation to her presence in that city as disclosed by the evidence was that he came to the station to show her a place where she could obtain a home while remaining in the city. We think it clear that there was an entire failure on the part of the Commonwealth to show that he transported or aided or assisted in transporting the young woman to Bradford. There is no contradiction of the evidence that he made no contribution in any way to her carriage to Bradford. All the evidence on the subject is that the young woman determined for herself to go there to get employment, and it would be applying to the statute an unwarranted construction which would make a person at the place of her destination liable for participation in carrying her there because of the fact that on request of an acquaintance in another town he met a woman friend of that acquaintance at the station for the purpose of procuring for her a place for lodging. The defendant may be, as contended by the Commonwealth, a disreputable person, but to justify his imprisonment for a period of seven years in the penitentiary, evidence is necessary to establish a state of facts clearly declared by statute or by the common law to be a crime. This evidence must be sufficient to sustain the charge in the indictment on which the conviction was had.

The judgment is reversed and the defendant discharged from his recognizance.