# Commonwealth *v.* Lavery, Appellant.

*Criminal law—Pandering—Act of June 7, 1911, P. L. 698—*
*"Prostitution"—Statutes—Construction — Evidence — Insufficient*
*evidence.*

1. In construing a statute creating a new criminal offense and naming a heavy penalty by way of punishment, a strict construction should be adopted. Words used in a statute, if of common use, are to be given their natural, plain, obvious and ordinary signification.

2. Prostitution, within the meaning of the Act of June 7, 1911, P. L. 698, which provides that anyone who shall procure or entice a female person to become an inmate of a house of prostitution, or to enter, for the purpose of prostitution, any place within the Commonwealth where prostitution is practiced, encouraged or allowed, shall be guilty of pandering, is not mere fornication or adultery, confined to any one man, but indiscriminate, illicit intercourse with any man seeking it.

3. On the trial of an indictment for pandering, it appeared that defendants had induced two females to enter a house of ill fame in their company, but there was nothing in the evidence to show that they had done so for any purpose other than fornication with the defendants themselves. The jury found a verdict of guilty and sentence was subsequently imposed. *Held,* the evidence was not sufficient to sustain the verdict and the judgment of the lower court was reversed.

Argued Oct. 20, 1914. Appeals, Nos. 163 and 164, Oct. T., 1914, by defendants, from judgments of Superior Court, Nos. 110 and 111, April T., 1914, affirming judgments of Q. S. Allegheny Co., Sept. Sess., 1913, No. 289, on verdict of guilty in case of Commonwealth v. W. J. Lavery and Leo Kennelly. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Reversed.

Appeal from Superior Court.

The facts appear by the opinion of the Supreme Court and in Commonwealth v. Lavery, et al., 57 Pa. Superior Court 154.

The defendants were indicted for pandering under the Act of June 7, 1911, P. L. 698. A verdict of guilty was found and sentence was imposed.

The judgment of the Court of Quarter Sessions was affirmed by the Superior Court. Defendants appealed.

*Error assigned* was the judgment of the Superior Court.

*James E. Barnett,* with him *Rody P. Marshall* and *Meredith R. Marshall,* for appellants.

*R. M. Gibson,* Assistant District Attorney, with him *R. H. Jackson,* District Attorney, for Commonwealth.

OPINION BY MR. JUSTICE BROWN, January 2, 1915:

The Act of June 7, 1911, P. L. 698, defines the offense of pandering. It declares that anyone who shall procure or entice a female person to become an inmate of a house of prostitution or to enter, for the purpose of prostitution any place within the Commonwealth where prostitution is practiced, encouraged or allowed, shall be guilty of the said offense. The two appellants were prosecuted under this act in the Court of Quarter Sessions of Allegheny County. The indictment against them contained two counts. The first charged them with having induced and enticed two female persons to become inmates of a certain house of prostitution and assignation where prostitution was practiced. The second charged them with having enticed and procured the said females to enter the said house for the purpose of prostitution. After properly defining the meaning of the word "inmate," as used in the first count of the indictment, and telling the jury that there was no evidence to support the charge contained in it, a verdict of acquittal was directed on it. The question of the defendants' guilt on the second count was submitted to the jury, who found them both guilty. After having been duly sentenced,

the judgment against each one of them was affirmed on appeal to the Superior Court: Commonwealth v. Lavery, et al., 57 Sup. Ct. 154, 160.   On the appeals to the Superior Court and on these to us the sole question was and is the sufficiency of the evidence to sustain the second count of the indictment.

The Act of 1911 is a highly penal statute and must be strictly construed.   This is especially true as it creates a new criminal offense, for the punishment of which a severe penalty is prescribed.   Courts can go no further than the legislature has gone in passing the act, and their duty is to see that it is confined to the particular species of immorality intended to be suppressed by it.   The conduct of the two appellants on the night they took the two young women to the house of assignation may have been painfully and grossly immoral and in violation of divine law, but the question for dispassionate judicial consideration is whether in what they admittedly did they were guilty of the offense for which they were indicted under the Act of 1911.   If they were guilty, they must be punished; if not guilty, they must be discharged.

It is again to be noted that the Act of 1911 is one defining and prohibiting pandering.   There is nothing in it prohibiting mere fornication or adultery, or providing any punishment for either of these immoralities, nor is the mere enticing or procuring of a female person to enter any place within the Commonwealth where prostitution is practiced, encouraged or allowed made a crime by the act.   That which it declares shall be a crime is the enticing or procuring of a female to enter the place "for the purpose of prostitution."   What is the meaning to be given to these words?   The affirmance or reversal of the judgment against each appellant depends upon the meaning which the legislature intended to be given to them.

In construing a statute a cardinal rule is that the words used in it, if of common use, are to be given their natural, plain, obvious and ordinary signification.   Ap-

plying this rule, as we must, to the Act of 1911, what is the meaning of the words "for the purpose of prostitution"? No doubtful or uncertain import is attachable to the term "prostitute" or "prostitution." A "prostitute" is universally understood to be a woman who has given herself up to indiscriminate lewdness, and "prostitution," as practiced by a woman, has the equally well understood meaning everywhere of her offer of her body for hire to men for indiscriminate sexual intercourse. This popular meaning of these words is the one given to them by the standard dictionaries, and, in construing statutes similar to our Act of 1911, appellate courts have uniformly held that "prostitution" within their meaning is not mere fornication or adultery confined to one man, but indiscriminate illicit intercourse for hire with any man seeking it. In Commonwealth v. Cook, 53 Mass. 93, a statute similar in language to our own now under consideration was judicially construed. In holding that the words "for the purpose of prostitution" did not apply to the case of a man's enticing a woman to leave her place of abode for the sole purpose of illicit sexual intercourse with him it was said: "Cases of gross immorality do, from time to time, occur, in which the court feel constrained to say that the acts complained of are not punishable criminally by any statute law of the Commonwealth; and the inquiry, which meets us in the present case, involves precisely that point. Are the acts of the defendant punishable by the statute above mentioned? ......It hardly need be said, that in construing a statute creating a new criminal offense, and enacting heavy penalties by way of punishment, a strict construction should be adopted. The court can go no further than the legislature have gone. If, in the use of terms defining an offense, the legislature have used language indicating a particular species of immorality, the court can only give alike effect to such words. The offense created by the statute is that of fraudulently and deceitfully enticing and taking away an unmarried woman from her fa-

ther's house 'for the purpose of prostitution at a house of ill fame, assignation or elsewhere.' What is the meaning of the term 'prostitution'? We cannot here, as in many other cases where crimes are made punishable by statute, and yet left undefined by such statute, have recourse to the well known common law definitions of such crimes, for the exposition of the character of the offense thus made punishable by a legislative act. No such legal definitions of the term 'prostitution' are to be found; offenses of this nature not being the subject of punishment by the common law tribunals. We must, therefore, resort to the definitions of lexicographers of the best authority as our guide. If we refer to Walker's Dictionary, we find prostitution defined 'the act of setting to sale'; 'the life of a public strumpet.' A prostitute is defined 'a hireling; a mercenary; one who is set to sale; a public strumpet.' Johnson defines a prostitute 'a public strumpet; a hireling.' To prostitute, 'to expose upon vile terms.' In Webster's Dictionary, prostitution is 'the act or practice of offering the body to an indiscriminate intercourse with men.' Prostitute is 'a female given to indiscriminate lewdness; a strumpet.' Prostituting is 'offering to indiscriminate lewdness.' These definitions, it will be seen, all apply to prostitution the act of permitting illicit intercourse for hire, an indiscriminate intercourse, or what is deemed public prostitution. That such is the meaning of the term 'prostitution' is strongly confirmed by the case of Commonwealth v. Harrington, 3 Pick. 26. In that case an indictment was sustained against a party who was alleged to have leased a house to one B., with the intent that the business of prostitution should be carried on there. The case throughout assumes that prostitution means common indiscriminate sexual intercourse, in distinction from sexual intercourse confined exclusively to one individual. It is true, as stated by the counsel for the government, that the term 'prostitution' has been sometimes used in a more loose and general sense, and that

instances of such use of the word may be found in reports of judicial decisions. 1 W. Bl. 519; 3 Bur. 1569, 13 S. & R. 32. But we are rather to inquire what is the appropriate and well authorized meaning of the term, and to assume that the legislature, in using the term in describing the offense created by this statute, intended to use the word in its proper acceptation. We cannot, therefore, give to the word 'prostitution' the broad and extensive application contended for on the part of the government. Such a construction of the statute would, to some considerable extent, make it applicable to cases where the real offense is seduction. The court are of opinion, that the offense made punishable by this statute is something beyond that of merely procuring a female to leave her father's house for the sole purpose of illicit sexual intercourse with the individual thus soliciting her to accompany him; that she must be enticed away with the view, and for the purpose, of placing her in a house of ill fame, place of assignation, or elsewhere, to become a prostitute, in the more full and exact sense of that term; that she must be placed there for common and indiscriminate sexual intercourse with men; or, at least, that she must be enticed away for the purpose of sexual intercourse by others than the party who thus entices her; and that a mere enticing away of a female, for a personal sexual intercourse, will not subject the offender to the penalties of this statute." We have quoted at length from the Cook case for the reason that what was there first held, so far as we are aware, as to the meaning to be given to the words "for the purpose of prostitution," as used in the statute, has since been followed by one appellate court after another, and we follow it now. Among the many cases in which exactly the same view has been expressed are: State v. Ruhl, 8 Iowa 447; State v. Stoyell, 54 Me. 24; Osborne v. The State, 52 Ind. 526; State v. Brown, 64 N. H. 577; State v. Gibson, 111 Mo. 92; Haygood v. State of Alabama, 98 Ala. 61.

In submitting the question of the guilt of the appel-

lants to the jury on the second count of the indictment, the learned trial judge, following the authorities which we have just cited, correctly charged them as to the meaning to be given to the words "for the purpose of prostitution." He said: "Upon the whole testimony, these questions of fact are submitted for your determination. First, what does the testimony show as to the character of this house? Was it a house where prostitution was practiced, encouraged or allowed? Prostitution has been defined to be where persons engage in indiscriminate intercourse, or where a woman submits her body indiscriminately to men for gain, not necessarily for so many dollars or so many cents, but for any personal advantage that she may conceive that she is deriving from the submission of her body to this illegal intercourse. It may be in the way of clothing or entertainment or whatever else it may be in the way of an advantage to her. If you are satisfied beyond a reasonable doubt that it was a house of prostitution, or where prostitution was practiced, encouraged or allowed, then did these defendants, knowing it to be such a house, by any scheme or device whatever, entice these two girls, Anna Butler and Katherine Byrnes, to enter that house for the purpose of prostitution, that is, for the purpose of submitting their bodies to unlawful sexual intercourse with men indiscriminately? If you are satisfied of that from the evidence in this case, then you will find a verdict of guilty under the second count of this indictment against these defendants or the one whom you adjudge to be so guilty. If you are not so satisfied beyond a reasonable doubt, then you will acquit the defendants." But there was absolutely nothing in the testimony from which an inference could possibly have been drawn that the two girls had been taken into a house of prostitution "for the purpose of prostitution," as these words must be understood in construing the act of assembly. The house which they were induced to enter may have been one of ill fame, and the jury may very properly have so

found from the evidence, but the offense with which the defendants were charged was enticing and procuring the girls to enter the house for the purpose of prostitution— for the purpose of becoming the objects of indiscriminate lust for pay. Of this, judged by the Commonwealth's evidence, they were not guilty. There was nothing in it to show that the girls had entered the house either to become inmates of it or for the purpose of prostitution. The offense of each of the appellants was but fornication, committed at a convenient place selected by themselves. For that offense only were they punishable, without regard to the place where it was committed. The judgment of the Superior Court in each case is reversed, as is the judgment against each defendant in the court below, and it is ordered that each be discharged from his recognizance.