## THE STATE OF CONNECTICUT *vs*. PHILIP SHIFFRIN.

Third Judicial District, Bridgeport, April Term, 1918.
PRENTICE, C. J., RORABACK, WHEELER, BEACH and SHUMWAY, Js.

Public-service automobiles are required by § 24 of Chapter 333 of the Public Acts of 1917, to display distinctive number-plates and to have interior lights; and § 1 of the same Act prescribes that a public-service automobile shall include any motor-vehicle operated as a jitney, " and any motor vehicle used for the purpose of soliciting and receiving passengers upon any public highway and carrying such passengers upon the payment of an individual fare." *Held* that upon a prosecution for a violation of § 24, it was incumbent upon the State to prove that the automobile in question, not being a jitney, was used for the purpose of soliciting, receiving and carrying passengers for hire; and that an instruction that it was enough for the State to show merely that the accused had accepted and carried a passenger for hire, was erroneous and prejudicial.

Solicitation need not be evidenced by the voice, nor involve importunity or personal persuasion: any acts or conduct intended and calculated to invite the patronage of expectant passengers amounts to solicitation, as that term is used in the statute.

Argued April 10th—decided May 28th, 1918.

INFORMATION for a violation of the motor-vehicle law, brought to the Criminal Court of Common Pleas in New Haven County and tried to the jury before *Simpson, J.;* verdict and judgment of guilty, and appeal by the defendant. *Error and new trial ordered.*

The evidence in this case was confined to that given on behalf of the State by a deputy automobile inspector.

That portion of his testimony which concerned the public-service character of the automobile which the accused was operating, was to the effect that on the evening of December 20th, 1917, at about six-thirty o'clock, he observed it standing near the curb in a portion of College Street in New Haven which had been officially designated as a public stand for motor-vehicles, hacks, express wagons, and so forth; that the accused was standing on the sidewalk beside it; that the witness thereupon approached the accused, then personally unknown to him, and asked him if he would take the witness down to the station as a public-service driver; that the accused replied in the affirmative; that the witness then entered the accused's automobile, which was forthwith driven by him in the direction of the station; that after proceeding about two blocks the witness changed his destination, and that after reaching the latter he alighted from the car and paid the regular fare of fifty cents, which the accused accepted.

*Arthur B. O'Keefe,* for the appellant (defendant).

*Edwin S. Pickett,* Prosecuting Attorney, for the appellee (the State).

PRENTICE, C. J. The defendant was convicted upon an information which charged him with operating a public-service motor-vehicle without complying with the requirements of § 24 of Chapter 333 of the Public Acts of 1917 concerning the display of the public-service registration number-plates, and the maintenance of interior lights. That there was noncompliance with these requirements was not denied. The defense was that the motor-vehicle which the accused was operating was not operated as a public-service one within the meaning of the statute.

The Act, in its first section, contains a definition of terms employed in it. Among these definitions is one of public-service motor-vehicles, which, it is said, "shall include any motor vehicle operated as a jitney and any motor vehicle used for the purpose of soliciting and receiving passengers upon any public highway and carrying such passengers upon the payment of an individual fare, but not including omnibuses running regularly between railway stations or boat-landings and hotels."

The court instructed the jury that by force of this definition a motor-vehicle was to be regarded as having a public-service character, and therefore subject to the regulations and requirements of § 24, which was operated either as a jitney, or for the purpose of soliciting and receiving passengers upon a public highway, or for carrying passengers upon the payment of an individual fare. This instruction was supplemented by the further one, that the State did not claim that there was proof either that the accused was using his car as a jitney, or that he had solicited passengers therefor, and that, therefore, the statute, in so far as it dealt with those conditions, might be dismissed from consideration. The jury were then told that the claim of the State was that it had established that the accused did accept and carry a passenger for hire, and that if such fact was found by them to have been proven they were justified in finding that he was operating a public-service vehicle. Under the evidence offered by the State and uncontradicted, this was equivalent to an instruction that a verdict of conviction should be returned upon no other proof than that the accused had carried a passenger for hire.

These instructions were founded upon a mistaken interpretation of the language of the statute defining public-service motor-vehicles. That language, in its

first portion, brings all motor-vehicles operated as jitneys within the public-service class. In its second portion it extends and elaborates the definition, so that all motor-vehicles, whether properly termed jitneys or not—save only an excepted class with which we are not now concerned—which are used for the purpose of soliciting and receiving passengers upon a public highway and carrying such passengers upon payment of an individual fare, are embraced within it.

There are not two independent conditions prescribed in this portion of the definition, either one of which being satisfied the public-service character of the motor-vehicle is established. There is only one, and that one embraces soliciting, receiving and carrying for hire. The grammatical construction of the sentence inevitably leads to that conclusion. The insertion of the "and" after the word "jitney," the nonrepetition of the words "any motor vehicle" or words of similar import before the word "carrying," and the use of "such" after "passengers," evidently referring to those who had been solicited and received, are clear indications of the legislative intent not to be ignored, and especially in a penal statute such as this in its present aspect is. It is too plain to be mistaken that all the language following the words "any motor vehicle," where they appear the second time in the definition, is used in its entirety as qualifying that term.

While this is true, it by no means follows, as counsel for the accused urge, that in order to give a motor-vehicle a public-service character there must be in connection with its use a solicitation of patronage in the sense of personal persuasion or earnest entreaty or importuning. Indeed, there may be no resort whatever to the use of the voice. Solicitation may be practised by other means than words. Any acts or conduct intended and calculated to invite the patronage of intending pas-

sengers amounts to solicitation, as that term is used in the statute. Whether or not the jury in the present case, upon the evidence before it, reasonably might have found the accused guilty of soliciting as well as carrying for hire, we have no occasion to inquire, since that question was taken away from them by the court's instructions and a verdict of guilty authorized upon no other proof than that the accused carried a passenger for hire.

There is error and a new trial is ordered.

In this opinion the other judges concurred, except RORABACK and WHEELER, Js., who dissented.