STATE OF IOWA, Appellee, v. CECIL HUCKELBERRY, Appellant.

**RAPE:** Assault With Intent—Evidence. Evidence held to present a jury question on the issue of guilt of assault with intent to rape.

**CRIMINAL LAW:** Trial—Instructions—Included Offenses—Lack of Evidence. Included offenses of which there is no evidence should not be submitted.

**WITNESSES:** Impeachment—Impeachment in Criminal Cases. A defendant in a criminal prosecution who testifies may be impeached by a showing that his general reputation for morality is bad.

**CRIMINAL LAW:** Instructions—Applicability to Evidence. In a prosecution for assault with intent to rape, the defendant's conduct at the time in question may justify an instruction on the theory that such conduct amounted to request for sexual intercourse.

CRIMINAL LAW:   Trial—Argument—Making Misconduct of Record.
5  Misconduct in argument may not be made a matter of record by
   affidavit of counsel.

*Appeal from Polk District Court.*—LESTER L. THOMPSON,
Judge.

JUNE 21, 1922.

REHEARING DENIED JANUARY 16, 1923.

THE defendant appeals from a conviction of the crime of
assault with intent to commit rape, and appeals from a judg-
ment sentencing him to the Anamosa reformatory.—*Affirmed.*

*James W. Wilson* and *J. L. Warren,* for appellant.

*Ben J. Gibson,* Attorney General, and *John Fletcher,* As-
sistant Attorney General, for appellee.

STEVENS, C. J.—I.  The indictment in this case charged
the defendant with the crime of assault with intent to commit
rape upon Dorothy Kaldenberg, a female child under the age
of 15 years.   The plea of the defendant was
"not guilty."

1. RAPE: assault
with intent: evi-
dence.

At the conclusion of the State's testimony,
the defendant moved for a directed verdict, on the ground that
there was not sufficient evidence to justify the submission of the
case to the jury.   The alleged insufficiency of the evidence to
sustain the verdict is the first proposition argued.

The crime is alleged to have been committed on or about
August 3, 1920.   At this time, the Kaldenbergs lived at Run-
nells, in a building formerly used as a hotel.   The family, on
the night in question, were sleeping upon the third floor of the
building, Dorothy occupying a large room by herself.   The
father and mother occupied a near-by room together, and Ed-
ward, the brother of prosecutrix, a room near the one occupied
by them.   Mrs. Kaldenberg testified that she was awakened
some time after midnight by the barking of a house dog, and
heard two men coming up the stairs, talking in low tones.   She

observed the men go into Edward's room and light some matches, and shortly come out of his room and go into the room occupied by Dorothy. She then aroused her husband, and told him what she had seen. He got up, and, taking a lighted lamp, went into Dorothy's room, where he saw the two men. The father testified that he saw the defendant by the side of Dorothy's bed, with his hand under her shoulder, apparently attempting to get into the bed with her. An altercation immediately ensued, in which several blows were struck by Kaldenberg and by the defendant. Kaldenberg further testified that the defendant's trousers were unbuttoned and his private parts exposed; that, just as he entered the room, he heard the defendant say: "Keep quiet, girlie. I will leave in just a few minutes." The other man, whose name is King, was standing near the bed, but took no part in the altercation. Dorothy testified that she was awakened by the defendant, who placed his hand on her head and pushed it back; that she called for her father, and, as soon as possible, ran from the room. She testified that the defendant did not uncover her or place his hands upon her body, or say anything about what he wanted. She did not notice that his trousers were unbuttoned, but Mrs. Kaldenberg also testified that they were. The defendant and King immediately went downstairs, pursued by Kaldenberg, and left the building. The defendant was arrested, after some attempt upon his part to escape, and placed in the custody of the constable, who confined him until morning.

The defendant and King testified that they spent a part of the afternoon and evening in the company, or at the home, of a local physician, but that, as he had other company, they could not be accommodated at his home for the night. They admitted that they had been drinking, and testified that they were tired from the previous loss of sleep, and that they went to the hotel building and, finding the door open and no one in the office, and supposing that it was a hotel, went upstairs in search of a bed. They further admitted that they went into Edward's room, and lighted some matches, and that Kaldenberg found them in Dorothy's room. The defendant testified that he did not notice Dorothy in the bed; that he lay down with his clothes on, and went to sleep; and that King lay down

on the floor by the side of the bed. They each testified that they were awakened by Kaldenberg's coming into the room. The defendant denied that his trousers were unbuttoned.

If the story of Mrs. Kaldenberg is entitled to credit, then the testimony of the defendant and King cannot be believed; as they did not, according to her testimony, have time to have gone to sleep after they entered Dorothy's room. The testimony of the father and of Mrs. Kaldenberg was sufficient to justify the submission of the case to the jury. The conduct of the defendant, as it appears from the testimony of the State's witnesses, fully justified the inference that he was intending to have sexual intercourse with Dorothy. Kaldenberg carried a lighted lamp into the room, and the jury had a right to believe that he told the truth as to what he saw and heard them do and say. Dorothy, who was twelve years of age, was awakened out of a sound slumber, and probably had a somewhat confused knowledge or recollection of what occurred. The case was properly submitted to the jury.

II. The court submitted to the jury assault and assault and battery as included offenses. The defendant now complains because the court did not submit assault with intent to commit great bodily injury. There was nothing in the evidence to indicate that the defendant intended to commit this offense, or to sustain a verdict therefor. It was manifestly not error to fail to instruct as to assault to do great bodily injury. *State v. Novak,* 151 Iowa 536; *State v. Brooks,* 181 Iowa 874.

2. CRIMINAL LAW: trial: instructions: included offenses: lack of evidence.

III. The State offered evidence, in rebuttal, for the purpose of showing that the defendant's reputation for general moral character, in the community in which he lived, was bad. This evidence was received over the objections of the defendant, and counsel now argue that, as the defendant had not put his character in issue, the evidence was inadmissible. The defendant took the stand in his own behalf, and thereby became subject to impeachment, the same as any other witness. The evidence was proper, under Section 4614 of the Code. It went to his character or credibility as a witness, and not to the particular trait of character involved in the offense charged. The ruling of the court

3. WITNESSES: impeachment: impeachment in criminal cases.

was correct. *State v. Brandenberger,* 151 Iowa 197; *State v. Teeter,* 69 Iowa 717; *State v. Dillman,* 183 Iowa 1147; 2 Wigmore on Evidence, Section 890 *et seq.*

IV. The court, in summarizing the evidence to be considered by the jury as bearing upon the question of the defendant's intent, included, among many other facts, "whether or not he solicited sexual relations with her." Exception is taken to the language quoted from the instruction. The exception is hypercritical, and without merit. Dorothy testified that the defendant did not tell her what he wanted; but solicitation does not necessarily consist only of verbal requests. According to the testimony of her father, the defendant had his arm around her shoulder, called her "girlie," and sought to quiet her by saying that he would leave in a few minutes. The instruction is not vulnerable to the exceptions urged.

4. CRIMINAL LAW: instructions: applicability to evidence.

V. Affidavits of defendant's counsel, charging misconduct in argument on the part of the assistant county attorney, were filed as a part of, or with, defendant's motion for a new trial. The argument was not taken down by the reporter, and was made of record only by affidavit, and the court made no finding of facts as to the matter set up in the affidavit. The record is not sufficient on this point, and the alleged misconduct of the assistant county attorney cannot be considered or reviewed upon this appeal. *State v. Burton,* 103 Iowa 28; *Ricker v. Davis,* 160 Iowa 37; *Spaulding v. Laybourn,* 164 Iowa 277; *Hein v. Waterloo, C. F. & N. R. Co.,* 180 Iowa 1225.

5. CRIMINAL LAW: trial: argument: making misconduct of record.

We have disposed of all matters argued by counsel for appellant. We find no reversible error in the record, and the judgment of the court below is—*Affirmed.*

WEAVER, PRESTON, and DE GRAFF, JJ., concur.