[Crim. No. 1903.   Third Dist.   Aug. 6, 1945.]

THE PEOPLE, Respondent, v. TROY PHILLIPS, Appellant.

S. W. Green for Appellant.

Robert W. Kenny, Attorney General, and David K. Lener and James O. Reavis, Deputies Attorney General, for Respondent.

ADAMS, P. J.—In an information filed by the District Attorney of Sacramento County defendant was charged in count one of deriving support and maintenance, in whole or in part, from the earnings and proceeds of a prostitute, knowing that such earnings and proceeds were derived from acts of prostitution; and, in count two, of soliciting for a prostitute.

At the conclusion of the trial the first count was dismissed. Defendant was convicted on the second count.

On this appeal it is contended first that the trial court should have instructed the jury to disregard all testimony relating to the first count, particularly the evidence tending to prove receipt by defendant of compensation for soliciting; and, second, that the evidence is insufficient to prove "soliciting" by defendant for a "prostitute."

The evidence shows that one Evelyn Fulford, who previously had been a waitress in Pasadena, had been living with defendant in Sacramento for a month or so prior to the 14th day of October, 1944. On the evening of October 14th she and defendant were driving about in Sacramento in defendant's car. Two soldiers stationed at Mather Field, who had started to "hitch hike" back to the Field from Sacramento, saw defendant's car stop a block ahead of them. As they approached this car Mrs. Fulford got out of it and appeared to be searching for something. She asked the two soldiers to help

her find the heel of her shoe. They engaged in the search without results, and in the meantime told Mrs. Fulford and defendant that they were trying to get to Mather Field, whereupon the latter offered to take them there. After they had entered the car and driven a few blocks Mrs. Fulford told the soldiers that she would have sexual intercourse with them for $5 each. One of them remarked that "that would be a good deal," whereupon defendant Phillips stated that they "would not regret it, that she was a good clean girl." The car was then parked and one of the soldiers, a sergeant, first had intercourse with Mrs. Fulford in the back seat of the car, while the other soldier, a private, stood with defendant outside and at the back of the automobile. The sergeant gave Mrs. Fulford some money, amounting to three or four dollars, which she gave to defendant, stating that he was her banker. The private then entered the car with Mrs. Fulford, where they had intercourse, while the sergeant and defendant stood outside and talked. During this conversation defendant stated that he had met Mrs. Fulford some three weeks previously; that she had been in "some sort of a jamb," and that he had helped her out of it; that she had told him she wanted to make a little quick money and he was helping her. After the other soldier got out of the car, the four of them reentered it and drove to a cafe where they picked up two sailors to whom the same proposition was made. The six of them then returned in defendant's car to the same spot where the previous acts had been committed. They had been there but a few minutes, and one of the sailors was about to have intercourse with Mrs. Fulford, when two members of the military police drove up. One of these men testified that when he arrived at the scene Mrs. Fulford was lying in the back seat of defendant's car and defendant was at the wheel; that defendant started to drive off, but was stopped within two or three blocks, whereupon the whole party, excepting the sergeant, who had run away, was taken to the police station. There the private demanded of defendant the return of his five dollars, and after some argument defendant returned it to him. There was also testimony that defendant, when arrested, had on his person something less than $10; also that a towel was found in defendant's car which the sergeant testified he had used after his act of intercourse, which towel was subsequently given to and accepted by defendant.

■ Regarding appellant's contention that the court should have instructed the jury to disregard all testimony relating to the first count in the information, particularly testimony tending to show receipt by defendant of compensation for soliciting, we find no merit in same. Any such general instruction could only have confused the jury since obviously some of the evidence bearing upon the first count was relevant to the charge in the second count. Defendant's counsel made no motion to strike out any testimony which he claims is irrelevant, or incompetent, and he has not pointed out to this court the evidence which he thinks should have been stricken; he made no request for such an instruction. (*People* v. *Wright*, 26 Cal.App.2d 197, 209-210 [79 P.2d 102].) On the contrary, the record shows that he did request an instruction (which the court declined to give) which is entirely inconsistent with his present claim of error, and which reads:

"You are further instructed that it is the duty of the People to prove beyond a reasonable doubt and to a moral certainty that Evelyn Fulford was a common prostitute and that Troy Phillips knowing Evelyn Fulford to be a prostitute derived his earnings, wholly or in part from the proceeds of her prostitution, and, if they fail to prove this as to the degree required by law it is your duty to acquit the defendant Troy Phillips."

■ As for appellant's contention that the evidence is insufficient to support the verdict on the second count in that it fails to show "soliciting" on the part of defendant or that Mrs. Fulford was a "common prostitute," we find same also to be without merit.

The applicable portion of the statute under which defendant was charged (Stats. 1921, p. 96; Deering's Gen. Laws, Act 1907) provides:

"Any male person who, knowing a female person to be a prostitute, . . . shall solicit . . . for such prostitute, shall be guilty of a felony, to wit: pimping, and upon conviction for an offense under this act shall be punished by imprisonment in the state prison for a period of not less than one year nor more than ten years." The words "common prostitute" are not used in the statute.

A prostitute is defined variously, as "A woman given to indiscriminate lewdness; now, specif., a woman who offers herself indiscriminately to sexual intercourse for hire." (Webster's New International Dictionary (2d ed.). Also see *Wilson* v. *State*, 17 Ala.App. 307 [84 So. 783]; *Commonwealth* v. *Lav-*

*ery,* 247 Pa. 139 [93 A. 276, 277]; *Schutte* v. *Schutte,* 90 W. Va. 787 [111 S.E. 840, 842]; *People* v. *Berger,* 169 N.Y.S. 319, 321; *Carpenter* v. *People* (N.Y.) 8 Barb. 603, 611; *State* v. *Stoyell,* 54 Me. 24, 27 [89 Am.Dec. 716]; *Cole* v. *State,* 156 Ark. 9 [245 S.W. 303, 305].) The evidence sufficiently establishes that the Fulford woman was a prostitute within the meaning of the statute.

As to whether there is sufficient evidence of solicitation by defendant, "solicit" is defined as: "To tempt (a person); to lure on, esp. into evil, . . . to bring about, forth, on, etc., by gentle or natural operations; to seek to induce or elicit; . . . (Webster's New International Dictionary (2d ed.)). "To appeal to (for something); to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain. . . . While it does imply a serious request, it requires no particular degree of importunity, entreaty, imploration or supplication. . . ." (58 C.J. 804-805.)

In *State* v. *Render,* 203 Iowa 329 [210 N.W. 911], the court said that a solicitation which might bring a defendant's acts within the terms of a statute which made it unlawful for any person to ask, request or solicit another to have carnal knowledge with any male or female for a consideration or otherwise, need not be in any particular form of words, and that it might well be that solicitation, within the meaning of the statute, could be accomplished by gesture and any other indication quite as effectively as by the use of any set or particular formula of language.

In *People* v. *Murray,* 307 Ill. 349 [138 N.E. 649, 655], where the meaning to be given to the word "solicit" as used in a statute prohibiting the solicitation of political contributions from city officers and employees was under consideration, the court said that to solicit meant "to importune; entreat; implore," but that it did not require any great degree of earnestness or persistence in preferring the request; that "It may be by action which the relation of the parties justifies in construing into a request." And there the conduct of the defendant was held such as to justify a conclusion that he solicited contributions in violation of the act. Also see *State* v. *Shiffrin,* 92 Conn. 583 [103 A. 899, 890]; *State* v. *Huckelberry,* 195 Iowa 13 [188 N.W. 587, 588]; *Broadway Auto Liv-*

*ery* v. *State Board of Public Roads*, 52 R.I. 109 [158 A. 375, 376].)

We think that defendant's words and actions under the circumstances of this case justified the jury in concluding that he solicited for a prostitute; and its conclusion will not be disturbed on appeal.

The judgment and order denying new trial are affirmed.

Peek, J., and Thompson, J., concurred.