Filed 7/30/13  Aerotek v. Johnson Group Staffing CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| AEROTEK, INC., | |
| Plaintiff and Appellant, | C067652 |
| v. | (Super. Ct. No. 342007005406O2CUBTGDS) |
| THE JOHNSON GROUP STAFFING COMPANY, INC. et al., | |
| Defendants and Respondents. | |

Here, we consider whether a former employee's announcement of his new employment by telephone and in person with former employer's customers constitutes a solicitation in violation of the Uniform Trade Secrets Act (UTSA) (Civ. Code, § 3426 et seq.).[1]  This case involves two companies that compete in the staffing industry to locate, screen, and place employees in temporary and permanent job positions with client firms. Aerotek, Inc. (Aerotek), employed Michael Ponce as an account manager before he switched to the Johnson Group Staffing Company, Inc. (Johnson Group).  Ponce

_____

[1]     Undesignated statutory references are to the Civil Code.

1

announced his new employment by telephone and in person to several Aerotek customers, who began to fill their staffing needs through the Johnson Group.

Aerotek appeals from a judgment in favor of Ponce and the Johnson Group on claims for violation of a nondisclosure agreement and misappropriation of Aerotek's trade secrets under the UTSA. Aerotek contends (1) evidence showing Ponce solicited its customers by telephone and in person should have compelled the trial court to grant Aerotek's motion for directed verdict and (2) a special instruction misstated the law by informing the jury an otherwise lawful announcement of new employment to a former employer's customer may be made in writing, by telephone, or in person.

We conclude the trial court properly denied the motion for directed verdict because the evidence allowed a reasonable trier of fact to conclude Ponce did not solicit any business from Aerotek's customers after he began working for the Johnson Group. We also find no error in the challenged jury instruction because neither the UTSA nor case law limits announcements of new employment to writing. Instead, the court must examine the totality of the circumstances to determine whether the actions constitute a permissible announcement of new employment or an impermissible solicitation of customers in violation of the UTSA. Accordingly, we affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

*The First Trial*

In November 2007, Aerotek sued the Johnson Group and Ponce (collectively defendants) based on allegations Ponce unlawfully solicited 15 of Aerotek's customers. Aerotek alleged Ponce's solicitations violated the nondisclosure agreement he had signed with Aerotek and constituted a misappropriation of Aerotek's trade secrets under the UTSA. Aerotek's complaint asserted its customer list constituted a trade secret under the UTSA. The defendants filed an answer denying any wrongdoing and asserting Aerotek's customer list did not qualify as a trade secret.

2

The matter proceeded to trial on Aerotek's narrowed claim that defendants solicited only five customers. The jury returned a special verdict in which it found defendants misappropriated Aerotek's customer information and the misappropriation caused Aerotek to sustain damages. However, the jury found the misappropriation was not a substantial factor in causing those damages. The jury also found Ponce breached his nondisclosure agreement with Aerotek and caused Aerotek to suffer $40,000 in damages.

Aerotek filed a motion for new trial based on inconsistent verdicts. The trial court granted the motion and ordered all of the issues to be retried.

### *The Second Trial*

Aerotek's trial brief for the second trial asserted Ponce had stolen a binder containing the customer list and used it to solicit "8 to 15 of his 'industry friends' all of which were individuals whom he had met and interacted with in his capacity as an Aerotek employee." At the beginning of trial, however, Aerotek informed the court that "any claim that the binder was actually stolen has been abandoned." Aerotek also announced it would limit its damages claim to the alleged misappropriation of only three customers.[2] Aerotek also sought injunctive relief –- but not damages –- as to a fourth customer.[3]

---

[2]     References to the names and identities of Aerotek's customers were sealed throughout the trial court proceedings. To preserve the confidential identities of the three customers on which Aerotek focused during the second trial, we refer to them as Customers A, B, and C or Companies A, B, and C. (§ 3426.5 [providing for preservation of trade secrets in judicial proceedings].)

[3]     On appeal, Aerotek does not assert any error in entering judgment in favor of defendants as to this fourth customer.

3

During the second trial, the parties stipulated Aerotek's customer list was a trade secret under the UTSA. Aerotek adduced evidence as follows: Aerotek operates as a staffing company that provides temporary and permanent employees to companies including those in the environmental and engineering fields. Sometimes, Aerotek employees needed years to persuade a customer to use a staffing company for an environmental or engineering placement. Aerotek considered its list of customers to be a valuable trade secret it sought to protect from its competitors.

Ponce became an Aerotek employee in March 2005. As a condition of employment, he signed a nondisclosure agreement that prohibited him from revealing the customers of Aerotek. In early 2006, Ponce became an account manager, working directly with representatives of Aerotek's customers in the environmental and engineering fields. By spring 2007, Ponce's supervisor observed he had become "very stressed" in his role as account manager. In June 2007, Ponce told his supervisor he was resigning from Aerotek "to go on vacation to Mexico" and then "pursue getting back into social work, which is where his previous experience and education was from." In response to his supervisor's questions, Ponce denied he planned to work for any of Aerotek's competitors.

Before Ponce left Aerotek, he worked to transition his customers to his replacement, Mike O'Brien. Ponce expressed reservations about O'Brien's lack of experience in the environmental and engineering fields. Nonetheless, Ponce set up as many in-person meetings between customers and O'Brien as he could. Ponce and O'Brien eventually met with six or seven Aerotek customers –- including Customers A and B –- to transition them to working with O'Brien. Ponce also worked to transition Customer C to working with Jeff LaChance, another Aerotek employee. At all transition meetings, Ponce told Aerotek's customers he did not know what he would be doing after he left Aerotek. He did not tell anyone he was going to stay in the staffing industry.

4

During the transition meeting with Customer A, its representative asked Ponce to "follow up with him no matter where [Ponce] landed." Ponce understood the invitation to be personal rather than business related. Likewise, Ponce's contact person with Company B asked him to follow up with her to let her know "where he landed." Customer C's representative also asked Ponce "to follow up no matter where [he] went."

Before leaving Aerotek, Ponce was instructed to revise a binder of materials with detailed information on all of the customers with whom he had worked. Ponce added detailed handwritten notes to the binder. On cross-examination, Ponce's supervisor at Aerotek admitted such detailed information seemed to be at odds with any intent to steal Aerotek's customers.

Ponce went on vacation to Mexico. On July 24, 2007, Ponce was still in Mexico when he sent an e-mail to the Johnson Group. The Johnson Group is a small staffing company in Sacramento founded by Chris Johnson. It competes with Aerotek. Ponce was hired in August 2007 as the Johnson Group's fourth employee. The Johnson Group already had a large number of environmental and engineering customers, and it was not a condition of employment that Ponce bring any customers from Aerotek. Ponce was also instructed that he was not to solicit Aerotek's customers when he made the announcement of his new employment.

Ponce consulted the Sacramento Business Journal and other lists of companies in the area in formulating a list of companies to whom he would announce his new employment. In announcing his new position with the Johnson Group, Ponce visited a number of companies, including Companies A, B, and C. As Ponce testified: "[T]he purpose was just an announcement in general, so if they did not offer business to me like they did not offer it, I never followed up with them again." Ponce further testified he did not solicit business while meeting with representatives of Companies A, B, and C.

*Company A*

In August 2007, Ponce had lunch with David L., his contact at Company A. Ponce had befriended David during his time at Aerotek, and they talked "about everything." Ponce announced he was working with the Johnson Group, and David began asking him questions about his new company. Ponce gave David a brochure about the Johnson Group as well as his business card. He denied giving the promotional materials to solicit Company A. Instead, he explained he "had a good relationship with David and wanted to let him know where I ended up." David then asked Ponce to help him fill a position at Company A, which had not previously done business with the Johnson Group.

During defendants' case-in-chief, David testified it was "not a big deal" to go to lunch with Ponce because they did so routinely while Ponce was with Aerotek. David did not remember the exact timing of when Ponce announced he joined the Johnson Group. However, David also did not feel like he was getting "the full court press to come over to the Johnson Group." David did not remember Ponce giving him a brochure. When shown a copy of the Johnson Group brochure, David testified: "I don't recall seeing this."

A copy of the four-page brochure was introduced at trial. It states: "The Johnson, Group, Inc [*sic*] is a dynamic consulting firm specializing in professional recruiting. We partner with many Architecture firms, Engineering firms, Environmental consulting firms, Homebuilders, Developers, and Construction companies in the Sacramento Region and many more nationwide. We make the connection for great placements and great careers. [¶] The Johnson Group, Inc. provides full service recruiting solutions. We offer a variety of hiring methods including Direct Placement, Contract, and Contract-to-Hire. Currently, we specialize in four niche Divisions including, Architecture, Environmental, and Construction Management." The remainder of the brochure enumerates common

6

placement types along with the repeated slogan, "Determined to Deliver." On the last page, the slogan is joined by a small caption that states: "Choose The Johnson Group, Inc."

### Company B

In August 2007, Ponce also met with Alexis M. at Company B. Ponce announced he was working at the Johnson Group. Alexis was already a friend of Chris Johnson's mother, and they talked about her. Alexis then told Ponce, "I have business for both of you." Ponce testified he did not solicit business from Alexis. However, he did give her a brochure and a business card.

Called by the defendants in their case-in-chief, Alexis testified she had worked with Chris Johnson's mother and liked her. When Ponce called to announce he was working with the Johnson Group, she invited him to meet with her. She explained, "I asked him to come out. I wanted to say hi. And I absolutely pursued The Johnson Group business because of my relationship with Caroline [Chris Johnson's mother] and my relationship with Michael [Ponce]. I don't know how to say it other than that." She further testified she was the one to ask Ponce to give her a brochure for the Johnson Group and to send over a sales contract. She added that Ponce did not solicit business from Company B either on the telephone or in person.

### Company C

Within a week of starting at the Johnson Group, Ponce called Victoria C. at Company C's headquarters in Wisconsin. They began to talk about the fact Victoria's husband had started his own staffing firm. Victoria then offered Ponce business at her firm. Sometime thereafter, Ponce met with Eric V., a local employee of Company C. Ponce announced he was with the Johnson Group, and Eric invited him to talk further in the Company C conference room. Ponce gave a brochure and business card to Eric.

Called by the defendants, Eric testified Ponce called him to announce he was with the Johnson Group. However, Eric did not remember meeting with Ponce. He also did not remember receiving a brochure from Ponce. When shown a copy of the brochure by Aerotek's counsel, Eric did not recognize ever having seen it.

### *Evidence of Damages*

Aerotek called an accountant who testified Aerotek lost $146,849 in profits due to the misappropriation of Customers A, B, and C.

### *Aerotek's Motion for Directed Verdict*

Before Aerotek rested its case-in-chief, it served a written motion for directed verdict on the issues of misappropriation and breach of the nondisclosure agreement.[4] Aerotek asserted the brochure for the Johnson Group that was given to Customers A, B, and C constituted solicitation as a matter of law. Aerotek also argued Ponce's telephonic and in-person contacts with the representatives of the customers at issue constituted solicitation as a matter of law. The motion was heard prior to the close of evidence. Aerotek relied on the arguments presented in its written motion. Defendants argued there was a substantial conflict in the evidence that precluded the granting of a directed verdict in favor of Aerotek.

---

[4] The parties disagree on the exact timing of when Aerotek made its motion for directed verdict. Aerotek states that it moved for directed verdict "[u]pon the conclusion of [the defendants'] case-in-chief" while defendants assert the motion was made before the close of evidence. Given our conclusion regarding the merits of the motion (part I, *post*), we need not resolve whether the written motion was filed prematurely or whether premature filing had any effect on the merits of the motion. (See Code Civ. Proc., § 630, subd. (a) [providing that "after all parties have completed the presentation of all of their evidence in a trial by jury, any party may, without waiving his or her right to trial by jury in the event the motion is not granted, move for an order directing entry of a verdict in its favor"].)

The trial court denied the motion for directed verdict. The court noted that "of the four at issue customers, [Aerotek] called none of such to tell the jury what went down on those occasions" Ponce contacted them. The court further noted: "Two of them were called by the defendants and the testimony of neither, I think, would support either one, close attention paid to the brochure or any of this language; or two, any direct solicitation remarks by Ponce or Johnson of the brochure." The trial court concluded the issues presented "a factual controversy" to be resolved by the jury.

### Verdict and Judgment

The jury returned verdicts in favor of the Johnson Group and Ponce. Specifically, the jury found defendants did not misappropriate any of Aerotek's trade secrets, and Ponce did not breach the nondisclosure agreement. The trial court entered judgment on the verdicts, and Aerotek timely filed a notice of appeal.

## DISCUSSION

## I

### Motion for Directed Verdict

Aerotek contends the trial court erred by denying the motion for directed verdict. Specifically, Aerotek argues the undisputed evidence established as a matter of law that defendants solicited Aerotek's customers and thereby misappropriated its trade secrets.

### A.

### Appellant's Duty to Present Facts in Support of the Judgment

As this court has previously admonished, "In every appeal, 'the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment. (*Foreman & Clark Corp. v. Fallon* [(1971)] 3 Cal.3d [875,] 881.) Further, the burden to provide a fair summary of the evidence "grows with the complexity of the record. [Citation.]" (*Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 290.)' (*Boeken v. Philip Morris Inc.* (2005) 127 Cal.App.4th 1640, 1658.)" (*Myers v.*

9

*Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 739 (*Myers*).) Failure to state the facts in the light most favorable to the judgment –- such as when an appellant sets forth only the evidence favorable to its contentions –- warrants forfeiture of claims on appeal. (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881.)

The duty to set forth the facts in favor of the defendants is reinforced in this case because defendants not only prevailed in the jury's verdict but they were also the nonmoving parties on Aerotek's motion for directed verdict. "A motion for directed verdict is properly granted ' "only when, disregarding conflicting evidence and giving to [the nonmoving party's] evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the [nonmoving party] if such a verdict were given." ' (*Estate of Lances* (1932) 216 Cal. 397, 400.)" (*Bell v. State of California* (1998) 63 Cal.App.4th 919, 923.)

Here, Aerotek's recitation of the facts does not comport with its duty to state the facts in the light most favorable to the judgment. Moreover, the opening brief repeatedly asserts that undisputed evidence at trial compelled the trial court to grant its motion for directed verdict. In its argument, Aerotek again sets forth the evidence only in its favor. Aerotek thus argues Ponce's in-person meetings with representatives of these customers combined with his providing of a brochure and business card necessarily established misappropriation of its trade secrets. Aerotek asserts that "Ponce personally went to visit Aerotek's customers with a sales brochure to try to get them to switch over to The Johnson Group."

Aerotek's arguments do not acknowledge the following evidence: Ponce testified he did not solicit the business of Companies A, B, or C when meeting with the representatives of these companies. Although Aerotek emphasizes the brochure as proof

10

of solicitation, it fails to note Ponce's contacts at Companies A and C did not remember ever receiving one from Ponce. Alexis from Company B did receive a brochure but testified *she* asked Ponce to send her a brochure. Moreover, all three representatives from Companies A, B, and C testified Ponce did not solicit them for business in making his announcement of employment with the Johnson Group. Consequently, we would be justified in deeming Aerotek's argument forfeited for failure to state (or even acknowledge) the evidence in favor of the judgment and the trial court's denial of the motion for directed verdict. (*Foreman & Clark Corp. v. Fallon*, *supra*, 3 Cal.3d at p. 881; *Myers*, *supra*, 178 Cal.App.4th at p. 749 & fn. 1.)

Based on the evidence we have recounted, the trial court properly denied the motion for directed verdict. "[A] motion for a directed verdict is in the nature of a demurrer to the evidence." (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 629 (*Howard*).) Thus, "[a] directed verdict may be granted only when, disregarding conflicting evidence, giving the evidence of the party against whom the motion is directed all the value to which it is legally entitled, and indulging every legitimate inference from such evidence in favor of that party, the court nonetheless determines there is no evidence of sufficient substantiality to support the claim or defense of the party opposing the motion, or a verdict in favor of that party." (*Id.* at pp. 629-630 [collecting authority].) "Thus, if the party resisting a motion for directed verdict produces sufficient evidence to support a jury verdict in his or her favor, the motion must be denied." (*Id.* at p. 630.) Consequently, even if not forfeited, the evidence shows that a reasonable trier of fact could have concluded Ponce did not ask for business from Companies A, B, and C in announcing his new position with the Johnson Group.

## B.

### *Solicitation by Brochure, Telephone, and in Person*

Aerotek further argues Ponce's use of the Johnson Group brochure coupled with his telephonic and in-person contact of Companies A, B, and C constitute solicitation under the UTSA as a matter of law. We disagree.

### *Solicitation by Brochure*

We reject the first contention regarding the brochure. Viewed in the light most favorable to the defendants, the testimony of representatives from Companies A and C was sufficient to allow a reasonable jury to conclude representatives of these companies did not receive a brochure from Ponce. Moreover, the evidence allowed for a finding that Ponce sent a brochure to Company B only after being asked for a brochure by that company's representative. Granted, the record contains conflicting evidence indicating Ponce gave the brochure unsolicited to Companies A, B, and C. However, a trier of fact may disregard the testimony even of a party witness. (*Parker v. Manchester Hotel* Co. (1938) 29 Cal.App.2d 446, 456 [noting that a "plaintiff is not bound by her [or his] own testimony"].) Rather than constituting a judicial admission –- as counsel for Aerotek asserted at oral argument –- the trier of fact had the prerogative to disregard any testimony by Ponce about giving a brochure to representatives of Companies A, B, and C. (*Ibid.*)

In short, the testimony provided by company representatives sufficed to defeat Aerotek's motion for partial directed verdict by providing evidence allowing the trier of fact to conclude no unsolicited brochure was ever given to Company A, B, or C. In considering a motion for directed verdict, "the trial court has no power to weigh the evidence, and may not consider the credibility of witnesses. It may not grant a directed verdict where there is *any* substantial conflict in the evidence." (*Howard, supra,* 72 Cal.App.4th at p. 629.) Credible evidence allowed the trier of fact to conclude Ponce did

not solicit business from Companies A, B, and C by giving them Johnson Group brochures.  Accordingly, the motion for directed verdict could not have been granted on the basis of solicitation by brochure.[5]

### *Announcements Made by Telephone and in Person*

According to Aerotek, Ponce's announcement over the telephone or in person of his new employment constituted solicitation as a matter of law regardless of whether Ponce asked for business or not.

California is one of 46 states, along with the District of Columbia and Virgin Islands, that have adopted the UTSA.  (12A West's Ann. Civ. Code (2013 supp.) *Table of Jurisdictions Wherein Act Has Been Adopted,* foll. § 3426.4, pp. 20-21.)  Codified at sections 3426 through 3426.11, the UTSA recognizes "the right of free competition does not include the right to use confidential work product of others."  (*Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th 1514, 1520 (*Morlife*).)  "Under the UTSA, a prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate:  (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff."  (*Sargent Fletcher, Inc. v. Able Corp*. (2003) 110 Cal.App.4th 1658, 1665, citing § 3426.1.)

The California Supreme Court has explained that a customer list is entitled to protection as a trade secret under the UTSA "if it '[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use' and '[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.'  (. . . § 3426.1, subd. (d); see, e.g., *Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th 1514, 1520–1522.)  A violation of

---

[5]     We note Aerotek does not attack the validity of the jury's verdict.

the UTSA occurs when an individual misappropriates a former employer's protected trade secret client list, for example, by using the list to solicit clients (*American Credit Indemnity Co. v. Sacks* (1989) 213 Cal.App.3d 622, 632–633 (*American Credit*)) or to otherwise attain an unfair competitive advantage (see *Morlife, supra,* 56 Cal.App.4th at p. 1523)." (*Reeves v. Hanlon* (2004) 33 Cal.4th 1140, 1155 (*Reeves*).)

In *Reeves*, the Supreme Court elaborated that "although an individual may violate the UTSA by using a former employer's confidential client list to *solicit* clients, the UTSA does not forbid an individual from announcing a change of employment, even to clients on a protected trade secret client list. (*American Credit, supra,* 213 Cal.App.3d at pp. 634–636; see *Hilb, Rogal & Hamilton Ins. Services v. Robb* (1995) 33 Cal.App.4th 1812, 1821; accord, *MAI Systems Corp. v. Peak Computer, Inc.* (9th Cir.1993) 991 F.2d 511, 521–522 [applying California law].) As one decision explains, merely announcing a new business affiliation, without more, is not prohibited by the UTSA definition of misappropriation because such conduct is 'basic to an individual's right to engage in fair competition.' (*American Credit, supra,* 213 Cal.App.3d at p. 636; cf. *Aetna Bldg. Maintenance Co. v. West* (1952) 39 Cal.2d 198, 204 [stating the common law rule].)" (*Reeves, supra,* 33 Cal.4th at p. 1156.)

Our Supreme Court has recognized that "[m]erely informing customers of one's former employer of a change of employment, without more, is not solicitation. Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee." (*Aetna Bldg. Maintenance Co. v. West* (1952) 39 Cal.2d 198, 204 (*Aetna*).) *Aetna* explained that " 'Solicit' is defined as: 'To ask for with earnestness, to make petition to, to endeavor to obtain, to awake or excite to action, to appeal to, or to invite.' (Black's Law Dictionary, 3rd ed., p. 1639.) 'It implies *personal* petition and importunity addressed to a particular individual to do some particular thing, . . .' (*Golden & Co. v. Justice's Court*, 23 Cal.App. 778, 798.) It means: 'To appeal to

14

(for something); to apply to for obtaining something; to ask earnestly; to ask for the purpose of receiving; to endeavor to obtain by asking or pleading; to entreat, implore, or importune; to make petition to; to plead for; to try to obtain.' (*People v. Phillips*, 70 Cal.App.2d 449, 453.)" (*Aetna*, *supra*, at pp. 203-204.)

Aerotek acknowledges *Aetna* "establishes a common law rule for announcements," but argues the subsequently-enacted UTSA provides a different definition of solicitation. We reject the argument.

A review of case law reveals *Aetna's* definition of solicitation is the same as that used in determining whether the UTSA prohibition on misappropriation of trade secrets has been violated in contacting a former employer's customer. (*American Credit Indemnity Co. v. Sacks* (1989) 213 Cal.App.3d 622, 633 (*American Credit Indemnity*); see also *Morlife*, *supra*, 56 Cal.App.4th at p. 1525.) Indeed, courts applying the UTSA continue to rely on *Aetna's* explanation of the distinction between announcements to and solicitations of customers whose identities constitute trade secrets. (See, e.g., *Morlife*, *supra,* at p. 1525 [quoting *Aetna's* definition of solicitation in assessing whether a customer list had been misappropriated under the UTSA]; *MAI Systems Corp. v. Peak Computer, Inc.* (9th Cir. 1993) 991 F.2d 511, 521-522 [relying on *Aetna, supra,* 39 Cal.2d 198 in a case holding that "[t]he UTSA definition of 'misappropriation' has been clarified by case law which establishes that the right to *announce* a new affiliation, even to trade secret clients of a former employer, is basic to an individual's right to engage in fair competition"]; *American Credit Indemnity, supra,* 213 Cal.App.3d 622, 634 [noting that "[a]lthough *Aetna* involved the customer list of a janitorial service which did not constitute a trade secret, the same rule [distinguishing between solicitations and announcements] has been applied where a trade secret list exists"].)

*Aetna, supra,* 39 Cal.2d 198 involved causes of action for unfair competition and breach of contract brought by Aetna Building Maintenance Co., a janitorial services

15

company, against James A. West, a former employee.  (*Id.* at p. 200.)  West was accused of violating an agreement not to "solicit, serve and/or cater" to any of Aetna's customers. (*Ibid.*)  After West left employment with Aetna, he announced to two or three customers of Aetna that he had gone into business for himself as a janitor.  (*Ibid.*)  "He visited one firm three times without invitation, but 'he did not solicit business.' " (*Ibid.*)  And, "[h]e also eagerly accepted business from Aetna's customers when it was offered to him." (*Id.* at p. 203.)  The trial court entered a judgment for the janitorial services firm and enjoined the former employee "from soliciting, diverting, or taking away, directly or indirectly, any customers of the plaintiff." (*Id.* at p. 202.)  The California Supreme Court reversed. The *Aetna* court held West had the right to announce to Aetna's customers that he was no longer its employee and to compete for janitorial business.  (*Id.* at p. 203.)  As the Supreme Court elaborated, "Merely informing customers of one's former employer of a change of employment, without more, is not solicitation.  Neither does the willingness to discuss business upon invitation of another party constitute solicitation on the part of the invitee.  Equity will not enjoin a former employee from receiving business from the customers of his former employer, even though the circumstances be such that he should be prohibited from soliciting such business." (*Id.* at p. 204.)  Because West had not solicited the business of his former employer's customers, judgment was wrongly entered against him. (*Id.* at pp. 203-204.)

As *Aetna, supra,* 39 Cal.2d 198 illustrates, solicitation refers to the act of asking for business.  Merely informing a former employer's customers of a change of employment, without more, is not solicitation. (*Id.* at p. 204.)  In *Aetna*, even a thrice-repeated, in-person announcement of new employment did not constitute solicitation. (*Id.* at pp. 200, 203-204.)  The willingness to discuss business upon invitation of another party does not constitute solicitation on the part of the invitee. (*Id.* at p. 204.)  Further, accepting business offered by a customer of a former employer does not constitute, by

itself, solicitation. (*Ibid.*) Similarly, advertising a new business association by driving the same laundry route as that taken while previously employed by a competitor laundry company does not, by itself, amount to solicitation. (*Theodore v. Williams* (1919) 44 Cal.App. 34, 39.) In *Theodore*, the former employee drove the same route in a newly labeled truck, placed an announcement of his new affiliation in the newspapers, and picked up "where [he had] been previously requested personally by note or by telephone to call and get the work." (*Id.* at p. 38.) Such conduct did not constitute improper solicitation. (*Ibid.* [under common law]; *American Credit Indemnity Co.*, *supra*, 213 Cal.App.3d at p. 635 [under the UTSA].)

Aerotek cites a number of unpublished federal district court cases applying California's trade secrets law in an attempt to show that the use of a telephone or in-person meeting constitutes solicitation. Unpublished federal decisions may be considered for their persuasive value. (*Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1070, fn. 10.) However, Aerotek's cited cases are not persuasive because they do not hold that telephonic or in-person announcements of new employment to the customers of a former employer necessarily constitute solicitation. To the contrary, in each of the cases the former employee impermissibly *asked* for business –- a solicitation that happened to be conveyed telephonically or in person. (See, e.g., *Hair Club for Men, LLC v. Elite Solutions Hair Alternatives, Inc.* (2007) 2007 U.S. Dist. Lexis 30167, *3 [granting preliminary injunction based on declarations former employees "contacted Plaintiff's customers and asked the customers to leave Plaintiff's business and to start receiving hair replacement services at Elite"]; *Allied North America Ins. Brokerage Corp. of Cal. v. Woodruff-Sawyer* (2005) 2005 U.S. Dist. Lexis 47388, *30 [granting preliminary injunction on likelihood plaintiff could prove former employee used the telephone to make announcement, invite questions, and discuss qualifications of new employer]; *Corporate Express Office Products, Inc. v. Martinez* (2002) 2002 U.S. Dist

17

Lexis 21310, *11 [granting preliminary injunction based on finding plaintiff was likely to prove "the telephone calls from [the new employer] to Corporate Express's customers went beyond a mere announcement and constituted a solicitation using misappropriated trade secrets"]; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Chung* (2001) 2001 U.S. Dist. Lexis 3248, *5 [granting preliminary injunction based on showing that former employees used the telephone to "engage [customers of the former employer] in conversations about the products and services offered by their new employer and to otherwise solicit Merrill Lynch customers to transfer their accounts"]; *Corporate Express Document and Print Management, Inc. v. Coons* (2000) 2000 U.S. Dist. Lexis 22243, *28 [granting preliminary injunction where plaintiff seemed likely to prove former employee "affirmatively [sought] the customers' continued business" by offering services and inviting a telephone call].) In short, nothing in these cases persuades us that the *mode* of communication –- whether in person or by telephone –- by itself determines whether a trade secret has been misappropriated.

The question of whether a former employee has misappropriated a trade secret by soliciting a customer depends on the content of the communication. (See *Aetna, supra*, 39 Cal.2d at pp. 200, 203-204.) As we have discussed above, substantial evidence was introduced at trial to allow a trier of fact to conclude Ponce did not solicit business from Companies A, B, or C after he joined the Johnson Group. The fact Ponce made his announcement of new employment in person or by phone does not, by itself, establish he impermissibly asked for business of these trade-secret-protected companies. Instead, the court must examine the totality of the circumstances to determine whether the actions constitute a permissible announcement of new employment or an impermissible solicitation of customers in violation of the UTSA. The trial court properly denied Aerotek's motion for a directed verdict.

## II

### *Special Jury Instruction No. 6*

Aerotek contends the trial court erred by giving special jury instruction No. 6. Special instruction No. 6 informed the jury: "If otherwise lawful, an announcement of a new business affiliation to a former employer's customer may be done in writing, over the telephone, or in person. [¶] An employee may use his or her memory to make an otherwise lawful announcement." In asserting error, Aerotek reiterates its contention that an announcement of new employment to a trade secret customer by phone or in person constitutes solicitation as a matter of law. Having rejected this contention, we also reject the argument the special instruction erred by stating an announcement of new employment may be done in writing, over the telephone, or in person.

A trial court has the duty to properly instruct the jury on the law applicable to the case. (*Thompson Pacific Const., Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 553.) Even so, " '[a] party is not entitled to have the jury instructed in any particular fashion or phraseology, and may not complain if the court correctly gives the substance of the applicable law.' " (*Cristler v. Express Messenger Systems, Inc*. (2009) 171 Cal.App.4th 72, 82.) "When a party challenges a particular jury instruction as being incorrect or incomplete, 'we evaluate the instructions given as a whole, not in isolation.' (*People v. Rundle* (2008) 43 Cal.4th 76, 149 (*Rundle*).)" (*Cristler*, *supra*, at p. 82.)

Finally, we presume the jury followed the given instructions in the absence of any showing to the contrary. (*People v. Morales* (2001) 25 Cal.4th 34, 47.)

Here, the trial court added to special instruction No. 6 the introductory phrase, "If otherwise lawful . . . ." By expressly limiting the instruction to announcements of new employment that do not solicit business, the instruction apprised the jury that the mode of communication does not make an otherwise permissible announcement unlawful under the UTSA. As we explained in part I, *ante*, an announcement of a new employment

19

relationship does not violate the UTSA simply because it is communicated by phone or in person.  (See generally *Aetna*, *supra*, 39 Cal.2d at pp. 200, 203-204.)  Consequently, the trial court did not err in instructing the jury that an announcement of new employment may be made to a trade-secret-protected customer of a former employer in writing, by phone, or in person.

## DISPOSITION

The judgment is affirmed.  The Johnson Group Staffing Company, Inc., and Michael Ponce shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


       HOCH       , J.


We concur:


     ROBIE     , Acting P. J.


     MAURO     , J.